# THOMAS F. BURNS v. DONNA RAE JOHNSON, ADMINISTRATRIX c.t.a. of ESTATE OF HARRIET LaRUE Y. STEWART.

188 N. W. (2d) 760.

May 28, 1971—No. 42610.

*Thomas F. Burns*, pro se, and *Alan Schunk*, for appellant.
*Donna Rae Johnson* and *Patrick F. Sullivan*, for respondent.

Heard before Knutson, C. J., and Murphy, Peterson, Kelly, and Odden, JJ.

DONALD C. ODDEN, JUSTICE.*

This matter is before the court on an appeal from a judgment

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

dismissing plaintiff-appellant's claim for the reasonable value of attorney's services rendered on behalf of LaRue Y. Stewart.[1] The dismissal was predicated on the trial court's conclusion that plaintiff had been retained in what amounted to a contingent fee arrangement in a divorce matter, such that under decisions of this court no recovery was permissible. We disagree.

The record presented contains evidence indicating that the basic facts of the dispute are as follows: LaRue Y. Stewart and Richard B. Stewart were married in November 1953 at Kansas City, Missouri. Shortly thereafter, they moved to St. Paul, Minnesota, where they purchased a home, obtained employment, and became domiciled.

In 1957, they discussed and mutually agreed to borrow $1,000 to purchase stock in a new corporation. They eventually did borrow said amount, both signing a personal note to repay the same. It was also agreed that Mrs. Stewart would continue her employment to help repay the $1,000 because the investment was, at the time of purchase, highly speculative. The note was eventually paid in full and the couple continued to purchase more stock under the same arrangement; that is, she continued to work to help defray their living expenses and repay loans upon which they were mutually obligated. In 1959, they discussed and mutually agreed to invest in the commodities market. By selling some of their stocks and using part of their accumulated savings, they invested and reinvested in such markets up to 1962, by which time they had accumulated a substantial net worth in excess of $200,000. During this time it was agreed between them that all purchases of securities were mutual and joint in that both Mrs. Stewart and her husband would have equal rights and liabilities with respect to the proceeds, profits, or losses. It was further agreed between them that they would have equal rights in the profits from their efforts whether profits were derived

---

[1] Before appeal was perfected and before judgment was entered, Mrs. Stewart died, and Donna Rae Johnson, administratrix c.t.a., was substituted in her behalf as defendant.

from investments, sales of such investments, or otherwise.

In early 1962, Mr. Stewart, for reasons known only to him, surreptitiously departed his wife's company and abode and left the state, leaving no forwarding address, taking with him all of their securities and liquid assets, and leaving Mrs. Stewart financially destitute. After consultation with, and representation by, at least two other St. Paul attorneys, both of whom she dismissed, Mrs. Stewart eventually, in 1964, retained Thomas F. Burns, plaintiff and appellant herein, to represent her in her plight.

It appears that plaintiff and Mrs. Stewart engaged in extensive discussions concerning what should be done since **Mr.** Stewart could not be located and Mrs. Stewart was financially unable to pay for extensive legal and investigative services. It was known, at that time, that Mr. Stewart had attempted to obtain a Nevada divorce and there was uncertainty as to whether it had been concluded, or, if it had, uncertainty as to its validity.

In January 1965, plaintiff and Mrs. Stewart entered into two retainer agreements, one which in substance provided for a fee of $400 for plaintiff's services in obtaining against Mr. Stewart a Minnesota divorce, in which action only the homestead in Ramsey County, its contents, and other inconsequential personal property would be involved; and another which in substance provided for a fee equal to 25 percent of any amount of the personal property Mrs. Stewart might recover from her husband in any state except Minnesota. Both retainer contracts were drawn at approximately the same time and were executed by both parties on the same date. Mrs. Stewart sold stock to obtain $1,500, which she advanced to plaintiff pursuant to the second retainer agreement for expenses, costs, and disbursements.

Plaintiff thereafter commenced an action for divorce in Mrs. Stewart's behalf, serving Mr. Stewart by publication. On June 22, 1965, default judgment was entered in Ramsey County, awarding Mrs. Stewart a divorce, possession of, and complete ownership of the homestead, the household furniture and fur-

nishings therein, and all personal property of Mrs. Stewart then in her possession. Since personal service upon Mr. Stewart had not been obtained, the court reserved to itself jurisdiction over permanent alimony, attorney's fees, and costs.

In the meantime, plaintiff, in some way not divulged in the record, located Mr. Stewart in Los Angeles, California. A law firm in Los Angeles was retained through plaintiff's efforts to represent Mrs. Stewart. Its agreement with plaintiff was that it was to receive 10 percent of any recovery from Mr. Stewart, which 10 percent was to be deducted from plaintiff's 25 percent.

Plaintiff prepared pleadings and did exhaustive research which he sent to California counsel. Eventually a lawsuit was initiated in California against Mr. Stewart. During this period, plaintiff engaged in settlement negotiations with a Minnesota attorney who had been engaged by Mr. Stewart. Shortly thereafter, Mrs. Stewart terminated the attorney-client relationship with plaintiff but retained the services of the California attorneys who had been brought into the case by plaintiff and by then were involved in litigation against Mr. Stewart. The record is unclear, but either following trial or during trial in California a settlement agreement was reached granting Mrs. Stewart the amount of $45,360. Of this amount, California counsel retained 12½ percent as their fee and retained an additional 12½ percent in trust for plaintiff, pending resolution of the fee dispute between him and Mrs. Stewart.

Plaintiff then commenced suit in Ramsey County against Mrs. Stewart seeking the reasonable value of legal services rendered in Mrs. Stewart's behalf, yet unpaid. Mrs. Stewart denied she was indebted to plaintiff and counterclaimed for damages, alleging incompetent representation and demanding punitive damages for abuse of process relating to plaintiff's garnishment of her bank account. Trial was commenced on November 12, 1969, and the following day plaintiff rested his case provisionally on the question of liability, with leave to reopen should the court determine that he had a valid claim against Mrs. Stewart. She

moved for dismissal. After being advised that she was withdrawing her counterclaim, the lower court entered an order for judgment, dismissing plaintiff's cause of action pursuant to Rule 41.02(2), Rules of Civil Procedure, and ordering judgment for the defendant with costs. The trial judge in his memorandum cites Baskerville v. Baskerville, 246 Minn. 496, 75 N. W. (2d) 762, as authority for his order.

While this appeal was pending, Donna Rae Johnson, as administratrix, obtained from the district court an order directing plaintiff to authorize California counsel to release to her the funds which were being retained in trust, or, in the alternative, to obtain, in an amount twice that of said funds, a bond to be filed with the clerk of court. Subsequently, plaintiff moved to set aside this order on the basis that the court lacked jurisdiction to order disposition of moneys the situs of which was in California, and further that only the probate court of Ramsey County or the probate court in California could have jurisdiction over the subject matter. The lower court refused to rule on this motion and, with consent of the parties, directed that the question be presented to this court for consideration.

■ One issue to be resolved here is: Where an attorney has entered into two separate retainer contracts with a woman client whose husband has deserted her, one to procure for a fee certain a divorce and adjudication of her rights respecting the marriage property located in Minnesota, and the other to procure a fee contingent upon the amount of recovery of her interest in personal property which the deserting husband had removed from the state, may such attorney, after being discharged by his client maintain an action to recover the reasonable value of legal services rendered, or does the fee arrangement constitute a fee contingent upon the amount of alimony and property awarded to the wife so as to be void as against public policy?

The fundamental law of this state concerning contingent fee arrangements in divorce actions is set forth in Klampe v. Klam-

pe, 137 Minn. 227, 163 N. W. 295, and Baskerville v. Baskerville, 246 Minn. 496, 75 N. W. (2d) 762.

In the Klampe case, the attorney and client entered into a contract whereby the attorney was to receive a contingent fee of 50 percent of any properties or moneys obtained by settlement or by action for his client in a then-pending divorce proceeding. This court said:

"The court will not lend its aid to enforce a contract between an attorney and his client for fees that savors of oppression or that is against public policy. As we view it, the contract under consideration is, in its nature, when construed in connection with the intention of the parties and in the light of surrounding circumstances, against public policy. The law does not favor divorce, and any agreement for divorce, or any collateral bargaining promotive of it, is unlawful and void." 137 Minn. 231, 163 N. W. 297.

The court went on to say that although the attorney could not recover under the contingent fee contract, he was entitled to a fee in an amount such as the court below might find to be reasonable.[2]

In the Baskerville case, the trial court found that the defendant had employed her attorneys on a contingent fee contract basis where they were to receive 15 percent of any and all alimony and property awarded to her. It was determined by the trial court that her attorneys were entitled to only the reasonable value of their services. On appeal, the defendant claimed the fee arrangement was not in dispute, was privileged, and was irrelevant and immaterial to a proper determination of the issues. This court held:

"Not only was the fee arrangement not privileged but testimony with respect thereto was both relevant and material to a

---

[2] Klampe v. Klampe, 145 Minn. 404, 177 N. W. 629, affirmed a judgment based on a jury verdict determining the reasonable value of the attorney's services.

proper determination of the issues. It is the function of a court in a divorce case to make property and alimony awards and to make an allowance for attorney's fees. In awarding alimony and property to a wife the court must consider her ability to live in the manner to which she has become accustomed. * * * This is strikingly true in the case of a contingent fee contract dependent upon the amount of alimony and support money awarded to the wife, such as in this case, since a contingent fee is deducted from the amount awarded to her and therefore tends to frustrate and defeat the court's effort to make suitable provisions for the wife." 246 Minn. 503, 75 N. W. (2d) 767.

We went on to say that testimony as to the fee arrangement was relevant and material from the standpoint that—

"* * * although a divorce suit is on its face merely a controversy between husband and wife, the state occupies the position of a third party charged with the duty of protecting the public welfare. Since the continuance of the marriage relation is deemed essential to the public welfare, the state is interested in its preservation. * * * 'Consequently, it is not fitting that it should be for the interest of an attorney that there should be no reconciliation. If compensation for an attorney's services is contingent on the securing of a divorce, or if the amount to be paid for his services is proportioned to the amount of alimony to be received, the attorney is in such a position that his interest would be against a reconciliation of the parties.' * * * A contract for the payment of a fee to an attorney contingent upon his procuring a divorce for his client or contingent in amount upon the amount of alimony and property awarded to the wife is void as against public policy." 246 Minn. 504, 75 N. W. (2d) 768.

In conclusion, we held:

"* * * Since contingent fee contracts in divorce actions are contrary to public policy they must be eradicated from our practice. We therefore expressly overrule the two Klampe v. Klampe cases, 137 Minn. 227, 163 N. W. 295, and 145 Minn. 404, 177

N. W. 629, insofar as they permit an attorney who is a party to a contingent fee contract in a divorce action to recover what his services are reasonably worth. Since the illegality of the contingent fee contract rests on the ground that it may govern a lawyer's action in a manner which thwarts public policy, the taint of illegality permeates the entire lawyer-client relationship in a divorce action so that every objection to permitting a recovery on the express agreement applies with equal force to an attempted recovery in quantum meruit." 246 Minn. 513, 75 N. W. (2d) 773.

Thus, if the facts of the case before us fall within the holding of Baskerville, plaintiff can recover neither under the contract nor in quantum meruit, and the dismissal of his action was proper.

Plaintiff urges that because the contingent fee arrangement did not relate to procurement of the divorce itself but rather to an equitable recovery in foreign courts of personal property surreptitiously removed from this state by the husband, the contingent fee contract respecting recovery of such property is not contrary to public policy and plaintiff should thus be permitted to recover the reasonable value of his services in quantum meruit.

Since any fee arrangement contingent upon or promotive of procurement of a divorce is void as against public policy, the question before us seems to rest on whether the contingent fee under the facts in this case, in view of the intention of the parties and in light of surrounding circumstances, was dependent upon, or increased by, the procuring of a divorce. To answer this, we must determine whether Mrs. Stewart had a right to maintain an action against her husband for an equitable share of the cash and securities taken by him when he deserted her, without having such action dependent on or ancillary to an action for divorce.

There is no question that she did have an action for support and maintenance independent of an action for divorce, for it has

long been the law of this state that the husband is bound to support his wife according to his station in life and he is not relieved by the fact that they live apart. 9A Dunnell, Dig. (3 ed.) § 4273, and cases cited thereunder; Waller v. Waller, 160 Minn. 431, 200 N. W. 480; Donigan v. Donigan, 236 Minn. 516, 53 N. W. (2d) 635. In the Waller case, this court held (160 Minn. 432, 200 N. W. 481):

"A court of equity, independent of an action for divorce or separation, and though grounds for such action do not exist, has jurisdiction to decree the wife support or maintenance. It may do so when the husband unjustifiably lives apart from his wife and refuses her support."

In the Donigan case, this court buttressed the Waller case by stating (236 Minn. 521, 53 N. W. [2d] 638):

"The fact that statutory provisions have been made for an action for divorce does not exclude by implication any jurisdiction which the courts may have to enforce the obligation to support in an independent action. It cannot be presumed that the legislature, while carefully providing for the continuance of the obligation of maintenance after divorce, intended thereby to cut off any jurisdiction which might have existed in the courts to enforce that obligation while the bonds of matrimony still existed."

Since this court historically has permitted the wife to bring an action for support or maintenance against her husband independent of a statutory action for divorce, we can find no reason which would preclude the wife from bringing an action, independent of an action for divorce, for her equitable share of personal property obtained through their joint efforts during coverture.

Thus, if such a cause of action can be maintained, would a contract for an attorney's fee contingent upon the amount of the recovery be void as against public policy under the reasoning of Baskerville?

From an examination of the factors underlying the Klampe and Baskerville decisions, it is possible to isolate three separate factors which lead to the rule in Baskerville. First and foremost, there is the consideration that if an attorney's compensation is dependent upon the procurement of a divorce, he may be encouraged not to seek reconciliation of the parties. Since reconciliation is to be favored and divorce is not, any contractual arrangement whereby compensation is dependent upon, or increased by, procurement of a divorce is said to be void as contrary to public policy. Moreover, since the policy is directed toward the possible influence which the contingent fee may have upon attorneys' actions in domestic relations matters, it has been the position of this court that effectuation of the public policy requires not only that the contract be unenforceable, but also that the attorney entering such an arrangement be barred from recovery in quantum meruit as well. We are aware that in denying quantum meruit recovery in such cases we are definitely in the minority of the jurisdictions which have ruled on this question. See, generally, Annotation, 100 A. L. R. (2d) 1378, 1390. Yet, we continue to find the reasoning of Baskerville compelling and consequently reaffirm that once it is determined that a contingent fee arrangement is violative of public policy, adequate effectuation of that policy requires that recovery be denied in quantum meruit as well as on the contract.

The second factor underlying the Klampe-Baskerville rule that contingent fee arrangements in divorce cases are contrary to public policy is the recognition of the possibility that the fees generated by such arrangements may prove unduly burdensome or oppressive to the parties. Thus, in Klampe, the oppressiveness of the fee seems to have been a major factor behind the court's holding. There, the attorney demanded a 50-percent contingent fee, and the court stated (137 Minn. 231, 163 N. W. 297):

"The court will not lend its aid to enforce a contract between an attorney and his client for fees that *savors of oppression* or that is against public policy." (Italics supplied.)

The third factor, like the second, relates to the possible size of the contingent fee, which in most instances tends to frustrate and defeat the court's efforts to make suitable provisions for the wife.

On the facts of the present case, it appears that the first factor—promotion of divorce—was not present. By its terms, the contingent fee agreement was limited to the recovery of property which had been taken by the deserting husband and in which the wife had an undivided property interest. The securities had been purchased with joint funds of the husband and wife. It is well established in this state that when a husband obtains property with funds belonging to his wife, such property is held in trust for the wife, and she may, regardless of whether a divorce is sought, maintain an action to recover the property. Rich v. Rich, 12 Minn. 369 (468); Gillespie v. Gillespie, 64 Minn. 381, 67 N. W. 206; Muus v. Muus, 29 Minn. 115, 12 N. W. 343. The right of a married woman to maintain an action against her husband to recover her property is based upon the married-women statute, Minn. St. 519.02. See, generally, the discussion in Spencer v. St. Paul & Sioux City R. R. Co. 22 Minn. 29; Gillespie v. Gillespie, *supra;* Note, 32 Minn. L. Rev. 262. A distinction is drawn between suits in tort and those in contract or relating to property, and it is stated in 9A Dunnell, Dig. (3 ed.) § 4288: "A wife may sue her husband in her own name in any form of action to enforce any right affecting her own property."

In neither an action based on contract nor in one relating to property would procurement of a divorce have been a prerequisite to the wife's maintenance of a suit against her husband. Hence, on the facts presented, it cannot be said that the contingent fee arrangement here involved was one necessarily promotive of divorce.

Furthermore, when an examination is made of the circumstances surrounding the creation of the contingent fee arrangement, it becomes clear that this particular agreement was not one promotive of divorce or offensive to public policy. Indeed,

it may reasonably be said that the agreement here made is entirely consistent with the policy of Klampe and Baskerville, and one which would tend to effectuate the interests of the state and of the deserted spouse in securing adequate provisions for the wife exclusive of the state's obligation to maintain her.

In this particular case, Mrs. Stewart had been deserted by her husband and left without any of the personal property which years of her working had enabled the couple to purchase and enjoy. The whereabouts of Mr. Stewart were unknown, and successful recovery of the property was at best speculative. The desertion was by then of some years' duration, and prospects for a reconciliation were improbable in view of the circumstances and the fact that two divorce actions had been initiated in Nevada by the husband. It may fairly be stated that the fee arrangement involved here not only was not promotive of divorce in the sense used in Baskerville, but was in fact possibly the only manner by which the deserted wife might hope to regain some of her lost property.

The other factors leading to the Klampe-Baskerville rule are not present. Unlike Klampe, it cannot be said that the amount of the contract fee here was oppressive or excessive since counsel was obligated to pay for services of an accountant to advise and aid him in determining and marshalling the assets of the parties, and further to pay an investigator in his attempt to locate Mr. Stewart.

Thus, under the peculiar facts of this case, it is apparent that the factors which in Klampe and Baskerville caused the contingent fee contract to be held void as against public policy are not present. Rather, under the facts of this case, it appears that the arrangement was conducive to enforcement of Mrs. Stewart's individual property rights and possibly offered the only means by which she could hope to secure them.

■ Moreover, this court should not be unmindful of the equities here presented. It is evident that appellant devoted substantial measures of time, money, and energy to Mrs. Stewart's

cause, only to be discharged when it appeared that, due to his efforts, she was about to succeed in the California action. We conclude that since the contingent fee arrangement is not void as against public policy, plaintiff, who was dismissed by Mrs. Stewart before funds were recovered under the agreement but after substantial services had been performed by him, should not be precluded from recovering for the reasonable value of his services.

The issue relating to the question of the trial court's jurisdiction, or lack thereof, to issue its order of June 10, 1970, affecting those funds retained in trust in California, is not properly before us. It is not here as an appeal from an order or judgment nor is it here by certification from the trial judge as important and doubtful, as required by Rule 103.03, Rules of Civil Appellate Procedure. It seems instead to be here only by consent or stipulation of the parties. Consent of the parties cannot compel the supreme court to hear and determine a matter not accepted by the court under its power of discretionary review. See, 1B Dunnell, Dig. (3 ed.) § 286, and a multitude of authorities cited thereunder; City of St. Louis Park v. Engell, 283 Minn. 309, 168 N. W. (2d) 3. Thus, since this question is not before us as an appeal from an order appealable of right, and there has been no request for discretionary review, this court will not review the matter even though the issue of appealability is not raised or stressed.

Reversed and remanded.