**Charles R. BROWNSING, Appellant,**

v.

**Nora BROWNSING, Appellee.**

**No. 60A01–8703–CV–68.**

Court of Appeals of Indiana,
First District.

Sept. 14, 1987.

Rehearing Denied Oct. 5, 1987.

Richard E. Culley, Indianapolis, for appellant.

Charles W. Edwards, Spencer, for appellee.

RATLIFF, Chief Justice.

## STATEMENT OF THE CASE

Charles R. Brownsing appeals from the Owen Circuit Court the dismissal of his complaint against Nora Brownsing. We affirm.

## FACTS

On August 21, 1981, the marriage of Charles and Nora Brownsing was dissolved pursuant to the decree and order of the Owen Circuit Court. The decree and order incorporated a property settlement agreement entered into by the parties. The agreement provided, in pertinent part, as follows:

"(b) Husband and wife jointly and by the entireties own real property situated at R.R. # 2, Box 229, Worthington, Owen County, Indiana. Said real property was acquired by the parties during their marriage. The husband shall continue to make the mortgage payments respecting said real property until said real property can be sold, at which time husband and wife shall equally divide the equity realized from the proceeds of said sale, with the husband first being reimbursed from said proceeds those funds constituting mortgage payments made by him following the dissolution herein before said equal division of equity by the parties takes place."

Record at 85. In late August of 1981, the Brownsings entered into a listing agreement with Mark III Realty, Inc. (Mark III) to sell the Worthington real estate. Although Mark III produced a prospective buyer, the sale failed, and the listing agreement expired. Subsequently, Mercer Realty Company contracted with the Brownsings to sell the property. Unfortunately, the Brownsings have been unable to sell the property.

On September 5, 1984, Charles brought an action against Mark III, and William Hogan as an agent of Mark III alleging breach of duty under the listing agreement and sought damages. Charles also named Nora as a defendant so that she could assert her interest in the law suit. Charles entered into a stipulation dismissing Mark III and Hogan and amended his complaint to seek a declaratory judgment or partition against Nora. Nora filed a separate petition for an order of modification and enforcement of the original decree. On October 1, 1986, Nora moved to dismiss the amended complaint. A hearing was held, and on December 9, 1986, the court dismissed the amended complaint. Charles appeals this dismissal.

## ISSUES

Although Brownsing raises three (3) issues on appeal, the following rephrased issues are dispositive:

1. Whether the trial court erred in dismissing Charles Brownsing's declaratory judgment and partition complaint.

2. Whether the Owen Circuit Court has jurisdiction to hear Nora Brownsing's petition for modification and enforcement of the original divorce decree.

## DISCUSSION AND DECISION

*Issue One*

Charles argues that the trial court erred in dismissing his complaint which sought a declaratory judgment on the issue of Nora's interest in the Worthington property or in the alternative a partitioning of the property. Specifically, Charles argues that, since the property's value has depreciated, Nora would receive nothing if the property were sold. Thus, Charles requests that the court declare that he can sell the property free from any claims by Nora. Charles also argues that this suit is not a collateral attack on the divorce decree, but rather an interpretation of the interests therein. Thus, Charles believes that the trial court had jurisdiction to adjudicate the parties' interests, erred in dismissing the complaint, and should have declared that Nora had no interest in the property. Charles' belief is mistaken.

■ A property settlement agreement that is incorporated into a final dissolution decree and order may not be modified unless the agreement so provides or the par-

ties subsequently consent. Indiana Code section 31–1–11.5–10(c); *Steele v. Davisson, Davisson and Davisson* (1982), Ind. App., 437 N.E.2d 491, 493; *Anderson v. Anderson* (1979), Ind.App., 399 N.E.2d 391, 397–98; *Pactor v. Pactor* (1979), 181 Ind. App. 329, 332, 391 N.E.2d 1148, 1150. All questions regarding the adjudication of marital property rights are put to rest by the divorce decree. *Meyers v. Handlon* (1985), Ind.App., 479 N.E.2d 106, 111; *Anderson*, at 397 n. 10; *Wilhelm v. Wilhelm* (1979), Ind.App., 397 N.E.2d 1079, 1081. As stated in *Wilhelm*,

"The legislature's intent was to enjoin the court, at the time of dissolution, to settle all property rights with certainty. Dissolution contemplates a final separation of the parties and a final division of their property. 'Their paths in life henceforth diverge, and, in legal contemplation, they are to each other as strangers.' *Wolfe v. Wolfe*, (1976), 46 Ohio St.2d 399, 350 N.E.2d 413, 421. Consequently, their subsequent conduct should not alter their respective rights in the marital estate; these rights must be determined by a final distribution of property made at the time of dissolution."

*Wilhelm*, at 1081. However, a dissolution decree and property settlement may be revoked or modified if a petitioner establishes fraud. Indiana Code section 31–1–11.5–17; *Thompson v. Thompson* (1984), Ind.App., 458 N.E.2d 298, 300–01; *Pactor*, 181 Ind. App. at 332–33, 391 N.E.2d at 1150. The court, however, cannot entertain a suit which seeks the modification of a divorce decree through a collateral action. *Nicholson v. Nicholson* (1888), 113 Ind. 131, 137–39, 15 N.E. 223, 226; *Goodyear v. Goodyear* (1982), Ind.App., 441 N.E.2d 498, 500; *Anderson*, at 400.

In *Goodyear*, Bonnie (Goodyear) attempted to obtain one-half (½) of an income tax refund check made payable to both her and Martin Goodyear, her ex-husband. *Goodyear*, at 499. The income tax refund resulted from Martin's filing of tax returns based on a net operating loss to a "sub-chapter S corporation" that the parties previously owned as husband and wife. *Id.* The loss occurred, however, a year

after the trial court had awarded Martin all stock in the corporation pursuant to a property settlement agreement which was incorporated into the January 4, 1979, dissolution decree. *Id.* Bonnie attempted to argue that equitably she was entitled to half of the refund and relied upon a quasi-contract theory. *Id.* at 500. The court rejected this theory, as follows:

"Taken in context, this evidence does not reveal an issue of quasi-contract, but instead expresses Bonnie's dissatisfaction with the weight given to her contribution to the acquisition and maintenance of marital property in the property settlement agreement. If the settlement agreement was inequitable, she should not have agreed to it. In any case, a collateral attack on the dissolution decree is inappropriate."

*Id.* Accordingly, the court reversed summary judgment for Bonnie and entered summary judgment in favor of Martin. *Id.* at 501.

As in *Goodyear*, the amended complaint in the present case was a collateral attack on the prior dissolution decree. The trial court previously decided the parties' interests in the real estate by the 1981 dissolution decree which incorporated the property settlement agreement. The decree specifically provided that Charles should continue to make mortgage payments until the property could be sold and that Nora would then obtain half of the proceeds from the sale less the amount of mortgage payments paid by Charles after the marriage ended. The decree remains in full force and effect. The amended complaint was not filed as a petition to reopen the dissolution proceedings. Rather, the suit was brought separately and independently from the dissolution requesting a declaration of the parties' interests in the property or alternatively a partitioning of the property.

Charles argues that the declaratory judgment suit is proper and not collateral to the dissolution decree because the suit is based upon a requested interpretation of the decree. However, this argument fails to recognize that the relief and procedures re-

quested were not provided for in the decree. The original decree only provides for sale of the property and distribution of the proceeds. No provision exists for subsequent judicial determination of the interests based upon market value calculations. Since the current suit was filed independently and not as a petition to reopen the dissolution proceedings for enforcement, the suit was collateral. Therefore, the trial court properly dismissed the amended complaint.

*Issue Two*

■ Charles next argues that the trial court lacks jurisdiction to hear Nora's petition to reopen the dissolution proceedings which seeks enforcement of the original decree.[1] Although Charles is correct in noting that a divorce decree cannot be modified or revoked unless the decree so provides, the parties agree, or fraud is shown, he fails to recognize that a court may reopen dissolution proceedings to clarify and enforce a decree. Indiana Code section 31-1-11.5-17. In the present case, no provision exists in the dissolution decree and the parties have not consented to modification. Furthermore, Nora has not alleged fraud, and even if she had, the suit was barred by Ind.Code § 31-1-11.5-17 which has a two (2) year limitation period. Thus, the only remedy that Nora can request is that the court reopen the proceedings to clarify and enforce the original order. This appears to be the nature of Nora's petition. Therefore, the court has jurisdiction and may clarify and enforce the original order and may appoint commissioners to carry out the sale of the real estate and distribution of proceeds as provided for by the original decree.

Affirmed.

NEAL, J., concurs.

GARRARD, P.J., concurs with separate opinion.

1. We note that the petition to reopen was filed independently from the suit seeking declaratory judgment or partition. Thus, the issue of the court's jurisdiction to reopen the divorce may not be properly before this court on appeal.

GARRARD, Presiding Judge, concurring.

I concur with the majority except to the extent that its opinion stands for the proposition that the court which dissolved the marriage may *only* "clarify and enforce" the original order in the absence of fraud, an express provision in a property settlement agreement, or the express agreement of the parties at the time of the proposed modification.

I recognize the general rule cited by the majority and its application to most post dissolution complaints.

I also recognize that occasionally a court may fail to foresee some contingency in its planned disposition of marital property. That risk is somewhat increased when the court is presented with a property agreement executed by the parties.

The judge may conclude that no fraud is involved and that he should restrain the temptation to modify what the parties themselves have agreed to. The lawyers, for a variety of reasons, may have failed to adequately express in the text of the agreement what should be the result upon the occurrence of some contingency.

If such a contingency, in fact, then occurs before the provisions of the agreement/decree have been fully performed, what should happen?

I see no need to make the answer dependent upon an escape hatch written into the agreement, or upon the agreement of the parties after the question has actually arisen.

Neither do I believe the court should at that juncture consider itself powerless or strain for some semantic difference between "modification" and "clarification" in order to justify action.

The clear purpose of the statute is to provide for a full and final distribution of the property rights of the parties. The parties themselves submitted that determi-

However, due to the interconnected nature of this issue to the present appeal, we will address this issue at our convenience to preserve judicial economy.

nation to the dissolution court when they granted it jurisdiction to dissolve their marriage.

It is one thing to say that once finalized by the trial process an order disposing of the property of the parties may not be revoked or modified (except for fraud or upon agreement) in the sense that property given to one spouse may not be given to the other; that what has been done should not be undone. It is quite a different thing to say that some aspect of the division which was not covered may not be considered by the court and provided for. I believe IC 31–1–11.5–17 is concerned with the former, and the inherent power of the court with the latter.

I realize this view should no doubt require fact determinative hearings in some cases to establish whether the alleged omission was indeed such, or whether the occurrence was covered by the agreement/decree, and it was merely the party's failure to perceive the consequences of the agreement that was the problem. Such matters are, however, capable of proof and our trial courts are fully up to the task.

On this basis, I concur.