■ ROBERT A. ROSS, Appellant, v LINDA DELORENZO, Respondent. [813 NYS2d 756]—

In an action to recover unpaid legal fees, the plaintiff appeals from so much of an order of the Supreme Court, Suffolk County (Burke, J.), dated September 23, 2004, as granted those branches of the defendant's motion which were for summary judgment dismissing so much of the first cause of action as sought recovery on a contingency fee agreement, the second cause of action, and the third cause of action.

Ordered that the order is affirmed insofar as appealed from, without costs or disbursements.

The defendant hired the plaintiff to represent her in a divorce action. The defendant and her husband, Anthony DeLorenzo, began their relationship in 1974. Soon thereafter, they began living together and bore a child together in 1975. According to the defendant, she and Anthony agreed, beginning in 1975, to form a partnership "for the purchase and sale of specialty antiques and collectible art," in furtherance of which the defendant agreed to perform domestic services and Anthony set up various business entities. The defendant also claimed that, beginning in 1975, she entrusted various antiques and pieces of collectible art to Anthony in reliance on his managing them for her benefit.

In 1979 the couple moved to a house in Smithtown, New York, owned by Anthony, and in 1981 Anthony granted the defendant a one-half interest in the house. According to the defendant, she and Anthony were married under the common law of Pennsylvania in 1983 and were married in a civil ceremony in New York in early 1990. The couple continued to live together until 1993, when the defendant decided to end the marriage due to Anthony's alleged adultery and cruel and inhuman treatment. According to the defendant, Anthony spent anywhere from two to five days a week with her at the house in Smithtown, and on the other nights he stayed in Manhattan for business.

Initially, the defendant and the plaintiff signed an hourly fee agreement. But, after discussing the case, the plaintiff concluded that, based on the short duration and alienated nature of the marriage and the dearth of marital property, the defendant was only entitled to nominal maintenance and was not entitled to equitable distribution. The plaintiff decided that he would interpose claims alleging an oral partnership and constructive trust alongside the claims for divorce, maintenance, and equitable distribution, and the parties signed a contingency fee agreement whereby the plaintiff would recover one third of all sums recovered on the partnership and constructive trust claims. Several months later, the parties executed a new hourly fee agreement that increased the plaintiff's hourly rate. According to the plaintiff, at some point during the course of the litigation he and the defendant agreed that he would accept $300,000 in full satisfaction of his fees if the matter settled for less than $1.8 million.

Also during the course of the litigation the Supreme Court, Kings County (Heitler, J.), granted the defendant's motion for pendente lite support and ordered Anthony to pay the defendant $2,000 per month. Thereafter, before trial, the defendant and Anthony entered into a stipulation of settlement whereby

they agreed to settle "all issues relating to maintenance, distribution of all their respective property rights . . . and . . . all other rights remedies, privileges and .obligations to each other arising out of the marriage relationship or otherwise." The settlement provided, inter alia, that the defendant would receive a total of $1,345,613 cash over three years, including $450,000 "for [the defendant's] support and maintenance," and $850,000 "for equitable distribution of marital property," as well as Anthony's one-half interest in the marital residence, valued at $184,500, and miscellaneous other property.

At a hearing on the same day, the parties stipulated to the settlement, and Anthony delivered to the plaintiff the sum of $970,000 and a deed transferring his interest in the house to the defendant. The Supreme Court granted the defendant's uncontested motion for leave to amend her complaint to include a claim of constructive abandonment, and on August 31, 1998, the court entered a judgment of divorce based on its finding that Anthony had constructively abandoned the defendant starting in August of 1994 and that the parties had identified and disposed of their separate and marital property pursuant to the terms of the settlement.

The plaintiff delivered the $970,000 settlement proceeds to the defendant, and the defendant thereafter remitted the sum of $200,000 to the plaintiff. The plaintiff reminded the defendant that he was entitled to an additional $100,000, but the defendant refused to pay it, and the present suit ensued.

The first question presented on this appeal is whether an attorney may, in the context of a suit which includes both matrimonial and nonmatrimonial causes of action, enter into a contingency fee agreement whereby he becomes entitled to a percentage of so much of the proceeds of the litigation as are derived from the nonmatrimonial causes of action. The issue appears to be one of first impression.

While an attorney may charge a contingency fee to prosecute nonmatrimonial claims generally (*see* 7 NY Jur 2d, Attorneys at Law § 209), "[a] lawyer shall not enter into an arrangement for, charge or collect . . . [a]ny fee in a domestic relations matter . . . the payment or amount of which is contingent upon the securing of a divorce or in any way determined by reference to the amount of maintenance, support, equitable distribution, or property settlement" (Code of Professional Responsibility DR 2-106 [c] [2] [i] [22 NYCRR 1200.11 (c) (2) (i)]; *see* 22 NYCRR 1400.1, 1400.2; *Xiao Yang Chen v Fischer*, 6 NY3d 94 [2005]; *Matter of Dangler*, 192 App Div 237 [1920]; *Van Vleck v Van Vleck*, 21 App Div 272 [1897]). "The rule against contingent

fees in domestic relations cases in New York is deep seated and well established. The policy reasons include a belief that this kind of fee might induce lawyers to discourage reconciliation and encourage bitter and wounding court battles. Another often expressed policy reason to preclude contingent fees in matrimonial actions is that they are not necessary, since the court may award attorney's fees to a nonmonied spouse and thus any party should be able to retain counsel" (7 NY Jur 2d, Attorneys at Law § 211).

The plaintiff argues that, because "res judicata bars a subsequent plenary action concerning an issue of marital property which could have been, but was not, raised in the prior matrimonial action" (*Boronow v Boronow*, 71 NY2d 284, 289 [1988]; *see Rakowski v Rakowski*, 109 AD2d 1 [1985]; *Marinelli v Marinelli*, 88 AD2d 635 [1982]), and because courts may not award attorney's fees for work performed in prosecuting nonmatrimonial causes of action (*see* Domestic Relations Law § 237; *Skinner v Skinner*, 271 AD2d 679, 681 [2000]; *Lucci v Lucci*, 227 AD2d 387, 389 [1996]; *Sandel v Sandel*, 96 AD2d 584 [1983]), permitting attorneys to charge contingency fees for the sums recovered pursuant to those claims is consistent with the purpose of Domestic Relations Law § 237 because it would facilitate the nonmonied spouse's access to the courts (*see O'Shea v O'Shea*, 93 NY2d 187, 190 [1999]).

We are also aware of rulings from other states holding that such fees do not violate the public policy against contingency fees in domestic relations matters because they are not contingent upon the securing of "alimony or support or property settlement in lieu thereof" (*Salter v St. Jean*, 170 So 2d 94, 95 [Fla 1964]; *see Burns v Stewart*, 290 Minn 289, 188 NW2d 760 [1971]; *In re Smith*, 42 Wash 2d 188, 254 P2d 464 [1953]). However, for two reasons, the better rule is to prohibit contingency fees in the context of any action containing matrimonial claims (*see e.g. Meyers v Handlon*, 479 NE2d 106 [Ind 1985]).

The first reason is that New York's prohibition on contingency fees in domestic relations matters is very broad, and does not distinguish between property settlements made in lieu of maintenance, support, or equitable distribution and property settlements based on nonmatrimonial property claims (*see* Code of Professional Responsibility DR 2-106 [c] [2] [i] [22 NYCRR 1200.11 (c) (2) (i)]; *see also* 22 NYCRR 1400.1, 1400.2).

Second, allowing contingency fees for nonmatrimonial claims interposed with matrimonial claims would contravene the important policy concerns that inform the general prohibition.

Such a rule would create an incentive for attorneys to characterize most, if not all, of the proceeds of a settlement as deriving from the nonmatrimonial claims in order to maximize the value of, and therefore the contingency fee derived from, those claims. The result would be to diminish the amount of property available for maintenance, support, and equitable distribution.

In fact, the case at bar exemplifies this problem. Despite the fact that the defendant and her husband lived together for nearly 20 years, bore a child together, and were married for at least 3—and perhaps as many as 10—years, and despite the plaintiff's expert's testimony that the defendant would be entitled to some award of maintenance and the defendant's successful pendente lite motion for maintenance, the plaintiff claims that the entire value of the settlement derived from the nonmatrimonial causes of action.

Therefore, as the Supreme Court correctly held, the defendant made a prima facie showing that she was entitled to summary judgment on so much of the plaintiff's first cause of action as sought recovery under the contingency fee agreement, and the plaintiff failed to raise any triable issues of fact with regard to that claim.

However, the defendant failed to make a prima facie showing that she was entitled to summary judgment on the plaintiff's claims that she breached the hourly retainer agreement. It was uncontested that both parties duly entered into the October 24, 1995 hourly retainer agreement and the parties' conflicting estimates regarding the extent of services rendered and the value of those services raises triable issues of fact. The defendant presented evidence that she was entitled to a refund of fees paid to the plaintiff, and in response, the plaintiff presented evidence that the defendant owed her anywhere from $173,800 to $300,000. Therefore, the trial court properly denied that branch of the defendant's motion which was for summary judgment on that claim (*see e.g. Epstein v Turecamo*, 258 AD2d 502 [1999]).

The defendant made a prima facie showing that she was entitled to summary judgment regarding the plaintiff's second cause of action for quantum meruit, and in response, the plaintiff failed to raise any triable issues of fact. "In order to make out a claim in quantum meruit, a claimant must establish (1) the performance of the services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services" (*Matter of Alu*, 302 AD2d 520 [2003] [internal quotation marks omitted]). However, a party may not

recover in quantum meruit where a valid and enforceable contract governs the relationship between the parties with respect to the subject matter for which the party seeks to recover (*see Battery Park Realty, Inc. v RKO Del., Inc.*, 18 AD3d 680 [2005]). Because the plaintiff is entitled to recover based on the October 24, 1995 hourly retainer agreement, the trial court properly granted that branch of the defendant's motion which was for summary judgment dismissing the cause of action for quantum meruit (*see id.*).

Finally, the defendant made a prima facie showing that she was entitled to summary judgment regarding the plaintiff's third cause of action alleging fraud, and in response, the plaintiff failed to raise any triable issue of fact. "The essential elements of a cause of action for fraud are 'representation of a material existing fact, falsity, scienter, deception and injury' " (*New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 318, quoting *Channel Master Corp. v Aluminium Ltd. Sales*, 4 NY2d 403, 407 [1958]). However, "[a] cause of action alleging fraud does not lie where the only fraud claim relates to a breach of contract . . . A present intent to deceive must be alleged and a mere misrepresentation of an intention to perform under the contract is insufficient to allege fraud . . . Conversely, a misrepresentation of material fact, which is collateral to the contract and serves as an inducement for the contract, is sufficient to sustain a cause of action alleging fraud" (*WIT Holding Corp. v Klein*, 282 AD2d 527, 528 [2001] [citations omitted]).

Here, the plaintiff's fraud claim merely alleged that he entered into a retainer agreement with the defendant based on her promise to pay and that she ultimately repudiated that promise. The plaintiff does not allege that he was induced to enter the agreement by a misrepresentation of any material fact collateral to the contract. Therefore, "the fraud claim arises out of the identical facts and circumstances . . . as the cause of action alleging breach of contract" (*34-35th Corp. v 1-10 Indus. Assoc.*, 2 AD3d 711, 712 [2003]), and the trial court correctly granted that branch of the defendant's motion which was for summary judgment dismissing the cause of action for fraud (*see id.; Non-Linear Trading Co. v Braddis Assoc.*, 243 AD2d 107 [1998]). Schmidt, J.P., Santucci, Rivera and Dillon, JJ., concur.