**Maryam M. Jamal, Plaintiff-Appellant, v. Ahmad Jamal, Defendant-Appellee.**

**Gen. No. 51,531.**

First District, Fourth Division.

July 17, 1968.

Cook & Watt, of Chicago (Rufus Cook, Garland W. Watt, and Raymond E. Harth, of counsel), for appellant.

Meyer Weinberg and Bernard Kaufman, of Chicago (Meyer Weinberg, Bernard Kaufman, and Harry G. Fins, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

Some four years after their divorce, plaintiff filed three separate petitions requesting post-decree relief: (1) the issuance of a rule to show cause why defendant should not be held in contempt of court for failure to comply with the child-support provisions of the decree; (2) enforcement of the property-settlement provisions of the decree through recognition and enforcement of a supplemental agreement thereafter entered into by the

parties; and (3) the issuance of a writ of ne exeat in support of the other two petitions. A writ of ne exeat was issued under which defendant was taken into custody and released on bond; defendant filed a motion to dismiss the second petition and filed answers to the other two petitions; and a hearing was held, at the conclusion of which an order was entered (1) denying plaintiff's petition for a rule to show cause, (2) striking her petition relating to property rights of the parties, and (3) denying ne exeat and releasing defendant's bond. Plaintiff's appeal followed.

First, as to the question of arrearage in child support. When the parties and their attorneys appeared in court with their records, they were directed by the court to repair to another room for the purpose of reconciling their differences and ascertaining by agreement the exact amount of arrearage, if any. After apparently attempting so to do, they reported back to the court that, while defendant had produced cancelled checks in more than the total amount due for child support from the date of the decree, some of the checks indicated that they were in payment of child support, but a good many others did not, and as to these latter checks there was a dispute as to whether or not they had been drawn for the purpose of child support. The issue of child-support arrearage as presented by the pleadings thus remained unresolved and was presented to the court for determination.

After a very considerable argument by counsel, the court called both parties as witnesses and conducted a brief examination. It touched very little, and only in a general way, upon the matter of child-support payments. Further, the court's only concern about the supplemental property agreement seems to have been whether defendant was in Chicago or New York when it was signed. Plaintiff said he was in Chicago. Defendant said he was in New York. Neither party was asked any questions

about the checks which were in dispute as to purpose. Counsel for defendant was permitted to ask some questions of both witnesses, and the court elicited some information about the peripatetic existence of defendant, who was an entertainer.

The only exhibits admitted into evidence were an empty envelope, which defendant said he had received in the mail from plaintiff's attorney about a week before the petitions were filed, and a copy of a letter which he said he had dictated over the telephone to his own attorney in New York, enclosing the empty envelope and telling him that he had no way of knowing what it was about. Prior to the examination of the witnesses, a number of checks had been shown to the court and they had been discussed by counsel, but they do not appear to have been introduced into evidence. Also, during the questioning of plaintiff, a copy of a letter from her was given an identification number but was not admitted in evidence. The primary argument of defendant's brief in this court is that we must affirm because the record is incomplete in not including the various documents just referred to. We do not agree, since only the two were admitted into evidence, and we fail to recognize the relevance of either. The letter from defendant to his attorney, incidentally, was read into the record in its entirety.

On the basis of the evidence introduced, no court could possibly determine whether there was an arrearage in child support as no testimony was elicited concerning the purpose of the checks which were in dispute. When the court concluded his preliminary type examination of the parties, as outlined above, he suddenly broke off the questioning and announced his decisions which were then incorporated in the order now subject to this appeal. He apparently decided that plaintiff's testimony, in response to the court's own questioning, supplanted her right to testify or present other evidence on her own behalf. Though counsel for plaintiff

immediately made formal request to cross-examine defendant and to interrogate his own client in support of her claim for $3300 in past-due child support, he was denied the opportunity to do either.* In a court of law this sort of procedure would be highly erroneous; in a court of conscience, it is unconscionable. The rights to cross-examine and to present evidence are so basic as to be grounded in due process. Collectively, they constitute the litigant's day in court. Illinois Constitution, art II, § 2; People ex rel. Bernat v. Bicek, 405 Ill 510, 526, 91 NE2d 588; Pettigrew v. National Accounts System, Inc., 67 Ill App2d 344, 350–351, 213 NE2d 778; Gorin v. McFarland, 80 Ill App2d 398, 408, 224 NE2d 615. Defendant's citations to the effect that the scope and extent of cross-examination are matters for the trial court's discretion do, of course, express sound principles of law but are not applicable to a situation of complete denial. We conclude that the procedure followed in the instant case effectively denied to plaintiff her day in court, and the resulting order must therefore be reversed and remanded for a proper hearing.

We next consider whether the court was correct in dismissing plaintiff's petition concerning property rights of the parties. This petition detailed the following allegations: (1) a decree of divorce was entered on March 6, 1962; (2) the decree incorporated in its terms a property-settlement agreement between the parties; (3) specific parcels of real estate were to be sold and in consideration of receiving half the proceeds from such sales, plaintiff waived alimony and other property rights; (4) plaintiff's share of the proceeds would have been worth more

---

* There can be no doubt as to the sufficiency of the record in this regard, as the following colloquy demonstrates:

"Mr. Cook (Counsel for plaintiff): I take it the record can show that I did not—I was not extended the privilege of cross-examination with respect to this defendant nor examination of my client on direct examination.

"The Court: You may have the record show that, counsel."

than $65,000; (5) the parcels were not sold, because defendant, by not paying his income taxes, allowed liens to attach to the properties in sums so large as to make their sale impractical and frustrate plaintiff's expectation of receiving $65,000 as her share of the proceeds; (6) in consequence of these altered circumstances, on October 24, 1963, plaintiff and defendant entered into a second agreement in "full settlement" of defendant's obligations under the divorce decree; (7) the new agreement provided that defendant was to remove all Internal Revenue Service liens from specific real estate, convey this real estate to plaintiff, and receive conveyances from plaintiff and members of her family of certain other business interests; (8) if the second agreement had been fully performed, plaintiff would have received a net equity of $272,500 in real estate, some of which had an exceptionally high income-producing potential; (9) plaintiff performed all of her obligations under the second agreement, and defendant transferred to her his title to the real estate, but defendant refused to satisfy his debts to the government, with the result that the property remained encumbered with the tax liens; (10) substantially all the property was lost through foreclosure; (11) due to her lack of funds, plaintiff had been powerless to prevent this loss; (12) plaintiff was unable to pay her attorneys' fees and costs incurred in the preparation of this petition.

The petition sought the following relief:

> "A. That Defendant be required to place Plaintiff in the financial position she would have enjoyed if he had honored the Decree and the Supplemental Agreement based on the Decree, and more particularly
>
> > "(1) That he be directed to pay to Plaintiff the sum of $272,500.00, plus interest from March 6, 1962, representing the net equities of

186

the properties conveyed to her by said Agreement.

"(2) That he be directed to pay to Plaintiff the income she would have received as a result of her acquisition of the 1321 South Michigan Avenue property.

"(3) That he be required to pay his income tax obligations for the period when he and Plaintiff were man and wife, so that no property received by Plaintiff in this proceeding may be lost to her by reason of seizure by the Internal Revenue Service for payment of Defendants' tax obligations.

"B. That Defendant be directed to pay all attorneys' fees, related fees and costs, and court costs, resulting from this proceeding.

"C. That Plaintiff may have such other and further relief in the premises as equity and good conscience may require."

Defendant moved to dismiss the petition on the grounds that the second agreement was not enforceable in the instant proceedings; that the prayer for relief was not sustained by the allegations; and that part A of the prayer was too vague. The court granted defendant's motion and struck the petition.

■■■ The original property-settlement agreement was incorporated into the divorce decree. When a decree embodies an agreement constituting a settlement of property rights and interests between the parties, its terms will not thereafter be modified under any circumstances. E. g., Walters v. Walters, 409 Ill 298, 99 NE2d 342; see 1952 Ill Law Forum 149. The property rights created in the decree become vested and, after thirty days, the court is without jurisdiction to modify them. Ill Rev Stats (1965), c 40, § 19. Bratkovich v. Bratkovich, 34 Ill App 2d 122, 180 NE2d 716. And this is true even though it

would retain jurisdiction for purposes of enforcement of the original decree. Brevet v. Brevet, 316 Ill App 406, 409, 45 NE2d 199. Furthermore, plaintiff's petition in this case alleged additional facts which indicate that her rights to enforce defendant's obligations under the property-settlement portion of the decree had been compromised and settled by the terms of the second agreement. Her claim under the decree thus became merged into the second agreement and is, therefore, no longer subject to the decretal enforcement procedures. See Blanchard v. Lewis, 345 Ill App 246, 253, 103 NE2d 183.

However, while plaintiff can no longer enforce her rights as conferred by the decree, she did allege facts which are sufficient to make out a prima facie case that defendant breached the second agreement, and she petitions the court particularly for relief from the legal injuries she suffered as a result of such breach. While we agree with defendant that the introductory paragraph of part "A" of the petition's prayer is vague, it may be treated as surplusage, and part "A" may be considered as requesting only the relief outlined in paragraphs (1), (2) and (3) thereof. See Baker v. Brown, 298 Ill App 173, 18 NE2d 578. We find these paragraphs sufficiently specific in requesting relief from the consequences of defendant's failure to perform his obligations under the second agreement, and amply supported by the allegations in the body of the petition. Ill Rev Stats (1965), c 110, § 34. It is our conclusion that, liberally construed, this pleading states a cause of action and should not have been stricken. Ill Rev Stats (1965), c 110, § 33(3).

The Circuit Court is the proper forum in which to seek redress for such an alleged grievance. Whether, not being properly filed in the Divorce Division under the post-decretal enforcement procedure, the petition should have been filed in a different department or division, is a question not here relevant. The appropriate remedy for

188

such a misfiling is transfer and not dismissal. Ill Rev Stats (1965), c 110, § 10(2).

 As to the issue concerning ne exeat, plaintiff filed an amended petition for such a writ, supported by her affidavit. The court entered an order thereon setting the bonds of both plaintiff and defendant, and directing that the writ issue. Plaintiff filed her bond; the writ issued; it was served on defendant; and he was released from custody upon posting his bond. Defendant then filed a document entitled, "Answer to Amended Petition for Writ of Ne Exeat." After the hearing related above, the court's order denied plaintiff's amended petition for issuance of the writ and directed the Sheriff to release defendant's bond. This was an inappropriate order as to both form and substance.

The hearing should not have been considered as bearing on the granting or denial of plaintiff's petition for the issuance of a writ, since the writ had already been issued and served. Under these circumstances, Section 11 of the Ne Exeat Act indicates that the issue for the court to determine is "whether the writ ought not to be quashed or set aside." Ill Rev Stats (1965), c 97, § 11. Since the writ was neither quashed nor set aside, it still has life in the hands of the Sheriff, despite the fact that defendant's bond was released.

As in the case of the hearing on the child-support petition, the hearing on the issues of both fact and law raised by the pleadings relating to ne exeat was inadequate for any proper determination. The court's orders in this regard are therefore reversed and the cause remanded for further proceedings not inconsistent with this opinion. Krakow v. Krakow, 349 Ill App 390, 110 NE2d 648. It is not clear to us how a successful appeal on this issue can be made effective where, as in this case, there is no supersedeas. These matters, including the selection of sanctions for effectuating our decision, are left to the resourcefulness of the parties and the trial court.

All parts of the order appealed from are reversed and the cause is remanded for further proceedings consistent herewith.

Reversed and remanded.

McCORMICK, P. J. and DRUCKER, J., concur.