MARY L. LICCIARDI, Plaintiff-Appellee and Cross-Appellant, v. HAROLD E. COLLINS *et al.,* Defendants-Appellants and Cross-Appellees.

First District (3rd Division)   No. 1—88—2197

Opinion filed March 15, 1989.

Bernard B. Rinella, Leslie L. Veon, and Walter J. Monco, all of Rinella & Rinella, Ltd., of Chicago, for appellants.

Donald A. Hitzel, Jr., of Pretzel & Stouffer, Chartered, and Bradley B. Falkof, of Griffin & Fadden, Ltd., both of Chicago, for appellee.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

On February 24, 1987, plaintiff, Mary Licciardi, filed a five-count amended complaint to recover $842,890 paid attorney Harold E. Collins and his law firm, Harold E. Collins & Associates (hereinafter collectively defendant), pursuant to a contingent fee contract for his services in litigation against plaintiff's former husband, Gerard Licciardi (Licciardi). On June 23, 1987, Judge Thomas J. O'Brien denied defendant's motion to dismiss the amended complaint. On February 24, 1988, Judge O'Brien granted plaintiff's motion for summary judgment on count I of her amended complaint; denied defendant's motion for same; and granted plaintiff's motion for summary judgment on count I of defendant's counterclaim. On July 12, 1988, Judge Thomas Rakowski denied plaintiff's and defendant's cross-motions for summary judgment on count III of the amended complaint; granted plaintiff's motion for summary judgment on counts IV and V, brought against defendants Mary Collins and Michael Collins, respectively, as transferees of portions of the fee paid defendant; and granted plaintiff's motion for summary judgment on count II of defendant's counterclaim.

Defendant appeals all of the orders in favor of plaintiff and/or adverse to him. Plaintiff cross-appeals the denial of her motion for summary judgment on count III of the amended complaint and the denial of prejudgment interest at the rate of 6.74% compounded daily.

Plaintiff's amended complaint alleged the following. Plaintiff and Licciardi were divorced on January 29, 1979, in the circuit court of Cook County. The judgment of dissolution incorporated by reference a separation agreement which provided for, *inter alia,* maintenance in gross to plaintiff. At the time of the divorce, Licciardi was president and chief operating officer of Anadite, Inc., a California corporation (Anadite). During the negotiations concerning the separation agreement, Licciardi asked plaintiff to keep his interests in Anadite out of

the divorce proceedings to avoid jeopardizing his position and interests in the company. In return, Licciardi agreed to give plaintiff 50% of his interests in Anadite. Contemporaneously with entry of the judgment on January 29, 1979, Licciardi delivered a letter agreement to plaintiff confirming their oral agreement. In October 1979, Licciardi: (1) agreed with Anadite to dispose of his interests therein and to use the proceeds to establish Gel Industries, Inc.; (2) entered a second letter agreement with plaintiff whereby she forbore from enforcing the first letter agreement and allowed Licciardi to retain the proceeds from his interests in Anadite in exchange for a 40% interest in Gel Industries. In July 1986, plaintiff consulted defendant concerning the letter agreements and the divorce after learning that Licciardi was contemplating the sale of Gel Industries. In August 1986, plaintiff entered a contract with defendant for his legal services which provided defendant with a contingency fee of 25% and $250 per hour (the contingent fee contract). Later that month, defendant filed a "Post-Decree Petition to Modify and Enforce Judgment for Dissolution of Marriage and Supplemental Agreements" in case No. 78—D—10315, plaintiff's divorce action, in the domestic relations division of the circuit court of Cook County. On October 10, 1986, an "Agreed Order for Modification of Judgment for Dissolution of Marriage and Specific Performance of Agreement" was entered by that court. In December 1986, plaintiff paid defendant the hourly fee, totalling $42,800 and a contingent fee of $800,000 pursuant to the contingent fee contract.

Count I of the amended complaint alleged that the contingent fee contract violated Supreme Court Rule 2—106(c)(4), which prohibits such agreements in respect of, *inter alia,* the procuring of a property settlement in or arising out of a dissolution of marriage. (107 Ill. 2d R. 2—106(c)(4).) Count II alleged that the fee paid defendant was so excessive as to be unconscionable. Count III alleged that defendant had a conflict of interest as a result of his representation of plaintiff and his prior representation of Licciardi in the divorce action. Count IV alleged that defendant transferred $700,000 of the fee paid by plaintiff to his wife, Marilyn Collins. Count V alleged that defendant paid his son, Michael Collins, $75,000 out of the fee paid by plaintiff. Each count sought, *inter alia,* an order rescinding the contract for legal services and fee agreement.

OPINION

On appeal, defendant contends that the trial court erred in denying the motion to dismiss count I of the amended complaint.

Plaintiff originally filed this action in the chancery division of the

circuit court. It was thereafter transferred to the domestic relations division of the circuit court. At a subsequent hearing before the presiding judge of that division, plaintiff stipulated that this case was unrelated to her prior divorce action. Based on that stipulation, the judge found that there were no matters in the instant cause "ancillary to the underlying divorce matter, 78 D 10315, and that the issue is entirely apart from said case" and retransferred the cause to the chancery division of the circuit court. Defendant now asserts that plaintiff's stipulation and the judge's findings estopped her from prosecuting count I of her amended complaint.

■ We cannot agree. Neither plaintiff's stipulation nor the trial court findings based thereon precluded her from challenging the validity of the contingent fee contract with defendant. That stipulation and those findings were both made for the limited purpose of deciding the division of the circuit court in which this case would be most appropriately heard. They were not made for the purpose of defining or limiting the issues which plaintiff could assert in this cause. Only if they were made for that purpose would defendant's cited cases, bearing on the binding effect of stipulations (see, *e.g., City of Chicago v. Drexel* (1892), 141 Ill. 89, 30 N.E. 774; *In re Estate of Moss* (1969), 109 Ill. App. 2d 185, 248 N.E.2d 513), require that the stipulation and findings based thereon be given the effect which defendant seeks. The stipulation and the findings based thereon were binding upon plaintiff only in the sense that she could not thereafter seek a retransfer of the cause to the domestic relations division of the circuit court. They did not estop plaintiff from alleging that defendant had entered into a contingent fee contract with her in violation of Supreme Court Rule 2—106(c)(4).

In granting plaintiff's motion for summary judgment on count I of her amended complaint, the trial court held that defendant's representation of plaintiff "was tantamount to procuring a [post-decree] modification of a property settlement agreement and therefore made in respect to procuring a property settlement that arose out of a dissolution of marriage." The trial court therefore held the parties' contingent fee contract unenforceable under Rule 2—106(c)(4).

Defendant contends that this holding was error because, as a matter of law, a property settlement in a dissolution proceeding is not modifiable after a final judgment has been entered therein under section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1987, ch. 40, par. 510). Section 510(a), defendant asserts, divests a court of jurisdiction after rendition of a final judgment and passage of the two-year period in which to seek a

vacation or modification under section 2—1401 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401). He thus argues that the action pursued on plaintiff's behalf was not one to procure a property settlement in a dissolution proceeding but, rather, one to obtain the enforcement of plaintiff's letter agreements with her husband, which were separate from their property settlement.

In response, plaintiff asserts that, notwithstanding section 510(a), the domestic relations court had subject matter jurisdiction over the parties and the cause to modify the judgment of dissolution under the doctrine of revestment. In support, plaintiff cites *In re Marriage of Demond* (1986), 142 Ill. App. 3d 134, 491 N.E.2d 501, and *In re Marriage of Savas* (1985), 139 Ill. App. 3d 68, 486 N.E.2d 1318.

■ Contrary to plaintiff's assertion and the application of the doctrine of revestment in *Demond* and *Savas,* the doctrine does not apply in dissolution proceedings where the 30-day and two-year periods in which to seek a modification or vacation of the judgment under sections 2—1301(e) and 2—1401 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, pars. 2—1301(e), 2—1401), respectively, have expired. See *Meyer v. Meyer* (1951), 409 Ill. 316, 319, 99 N.E.2d 137; *Kelly v. Kelly* (1982), 105 Ill. App. 3d 136, 434 N.E.2d 55; *Bratkovich v. Bratkovich* (1962), 34 Ill. App. 2d 122, 180 N.E.2d 716.

Notwithstanding this conclusion, however, we reject defendant's analysis. The question whether an attorney has entered into a contingent fee contract in an area of law in which such an agreement is prohibited cannot turn on whether the court in which he pursued an action for the client had subject matter jurisdiction over the cause as denominated by the attorney or as treated by the court. That fact is irrelevant to the determination of the illegality of a contingent fee contract pursuant to which an attorney obtains relief for a client.

Rather, we believe that the nature of the services which the attorney provides to the client is dispositive. As the trial court found, the nature of the services which defendant provided plaintiff is revealed, in the first instance, in defendant's July 25, 1986, letter to plaintiff. Defendant asserts that the letter merely set forth various legal theories for enforcement of the letter agreements between plaintiff and Licciardi. Even accepting defendant's characterization of the letter, the letter nonetheless reveals that defendant's representation of plaintiff was in the nature of representation to procure a property settlement in a dissolution proceeding.

In the letter, defendant noted that plaintiff's separation agreement with Licciardi provided that she expressly waived and relinquished all of her rights in any and all of his property and that it con-

tained the whole and entire agreement between them. He further noted that the judgment dissolving plaintiff's marriage incorporated the separation agreement by reference and deprived plaintiff of all of her legal rights with regard to Licciardi's income and property except as expressly set forth in the separation agreement. Defendant then informed plaintiff that they had a serious legal problem because of the terms of the separation agreement and judgment of dissolution. Defendant noted that while section 502(d) of the Act allowed parties to decide whether to incorporate their separation agreements into a dissolution judgment, it did require that the agreement so provide. Defendant further noted that section 502(d) of the Act also required that the judgment identify the agreement and that the trial court approve its terms. Defendant stated that neither the judgment of dissolution nor the separation agreement contained any reference to the first letter agreement, that the judgment did not identify the letter agreement, and that the judgment failed to indicate the trial court's approval of its terms. Further, defendant stated that there was a fair chance of "petitioning the Divorce Court to modify its Judgment for Dissolution of Marriage to incorporate the January 29, 1979 letter agreement." Defendant gave as a basis for his opinion the facts, *inter alia*, that section 502 of the Act permitted such an agreement, and that, since the letter agreement dealt only with property and maintenance, it would have been binding on the trial court in any event as it was not unconscionable.

Defendant then informed plaintiff that there was a strong probability that the October 15, 1979, letter agreement could be enforced. Defendant cited *Semmens v. Semmens* (1979), 77 Ill. App. 3d 936, 396 N.E.2d 1282, for the proposition that, without court approval, parties could modify a property settlement agreement incorporated into a divorce decree and that such modification is enforceable. Defendant also stated that, even if the first letter agreement was unenforceable, plaintiff could have filed a section 2—1401 petition asserting that she had been defrauded by Licciardi's and her lawyer's exclusion of the letter agreement from the judgment of dissolution and their failure to inform her of its resultant unenforceability. Defendant informed plaintiff that when she entered the second letter agreement she had a legal right to file proceedings to set aside the judgment of dissolution and to modify the separation agreement so as to include the first letter agreement. Finally, defendant informed plaintiff that the "Divorce Court" had retained jurisdiction for the purpose of enforcing its judgment of dissolution and that he believed they were compelled to go to that court with their lawsuit.

The nature of defendant's representation of plaintiff is further revealed by the written contract into which she entered with defendant. The contract stated that plaintiff retained defendant to represent her in her claim for damages from Licciardi on account of "marital property settlement contracts" entered into in January and October 1979.

We also note, like the trial court, that defendant filed in the domestic relations court a "Post-Decree Petition to Modify and Enforce Judgment of Dissolution of Marriage and Supplemental Agreements" and obtained an "Agreed Order for Modification of Judgment [of] Dissolution of Marriage and Specific Performance of Agreement" on plaintiff's behalf.

Defendant asserts that the trial court erred in relying on the labels placed on the petition pursued and the relief obtained on plaintiff's behalf. Defendant argues that the trial court ignored the law to the effect that the domestic relations court was without subject matter jurisdiction to modify the separation agreement between plaintiff and her former husband and that such jurisdiction cannot be conferred by the parties. Defendant also argues that the trial court erred in finding that the factual result of his representation of plaintiff was a modification of the property provisions of the judgment of dissolution. He maintains that the factual result of his services was an order declaring the enforceability of the private letter agreements of the parties. He concludes that, although this order purported to modify the judgment of dissolution, no modification, in fact, occurred.

As previously noted, the legality of the contingency fee contracted for by defendant cannot be made to turn on the subject matter jurisdiction of the court in which he represented plaintiff. In this regard, the label which defendant placed on the action pursued for plaintiff and which defendant and Licciardi's counsel placed on the agreed order entered pursuant thereto bely his assertion that he merely sought and obtained enforcement of the letter agreements between plaintiff and Licciardi. Having both sought and obtained a modification of the judgment of dissolution, it ill-behooves defendant to now assert that, as a matter of law, he could not seek and the trial court could not grant that relief.

The case of *Jamal v. Jamal* (1968), 98 Ill. App. 2d 180, 240 N.E.2d 246, which defendant claims reveals the procedure he followed in representing plaintiff, is not on point.

In *Jamal,* four years after the parties' divorce, the plaintiff petitioned for enforcement of the property settlement provisions of the divorce decree through recognition and enforcement of a supplemental agreement entered into thereafter. Under the property settlement

incorporated into the divorce decree, in consideration for half the proceeds from the sale of certain parcels of real estate, plaintiff waived her other property rights. The petition alleged that: (1) the parcels had not been sold because defendant allowed their encumbrance by income tax liens; (2) the parties had entered a second agreement in full settlement of defendant's obligations under the divorce decree; (3) that agreement provided that defendant was to remove the liens from certain parcels and convey them to plaintiff; and (4) all the parcels were lost through foreclosure. The petition prayed that plaintiff be put in the financial position she would have enjoyed had defendant honored the divorce decree and the supplemental agreement based thereon.

The appellate court first found that the trial court was without jurisdiction to modify the divorce decree to include the terms of the parties' second agreement. Considering only the portion of the prayer for relief seeking enforcement of the supplemental agreement, the court then found that the petition made out a *prima facie* case of defendant's breach of the second agreement and that plaintiff was seeking relief from the damages caused by that breach. The court also held that plaintiff's having filed the petition in the divorce division under the post-decretal enforcement procedure warranted only transfer to the proper division, not dismissal. *Jamal,* 98 Ill. App. 2d at 187-89.

We find *Jamal* distinguishable from this case. The petition in *Jamal,* as considered by the appellate court, merely sought to enforce an agreement which the parties entered after they were divorced. Here, in contrast, the petition filed by defendant on plaintiff's behalf sought to enforce an agreement entered before plaintiff and Licciardi were divorced, as well as one entered after their divorce. Putting aside the question whether the domestic relations court, in fact, had the power to enforce either agreement by modifying the judgment of dissolution, defendant's belief that the court had such power is conclusively established by the fact that the petition explicitly seeks such relief. Moreover, the petition is clearly premised on the theory that a modification of the judgment of dissolution was necessary for enforcement of the letter agreements.

The petition alleged, *inter alia* that: (1) plaintiff consented to the judgment of dissolution and settlement agreement entered by the court in reliance on the first private letter agreement with Licciardi; (2) the agreement was fair, equitable, not unconscionable, nor tainted with any fraud or illegal purpose; (3) the court would have been bound to approve the terms of the letter agreement and make it part of the judgment of dissolution and the settlement agreement had it been dis-

closed to the court; (4) the second letter agreement was fair, equitable, not unconscionable and would have been enforced by the court if brought to its attention; and (5) since the divorce, plaintiff had been forced to live on the meager property settlement provided in the judgment of dissolution. The petition then prayed that the court enter an order: (1) finding the letter agreements not unconscionable and enforceable; (2) modifying the judgment of dissolution and the settlement agreement to incorporate by reference the letter agreements; and (3) enforcing the judgment of dissolution "as modified" by requiring Licciardi to comply with the terms of the second letter agreement.

■■ ■ When considered as a whole, the petition filed by defendant in the domestic relations court did not merely seek to invoke the general jurisdiction of the court, to enforce the letter agreements between plaintiff and Licciardi, as the petition in *Jamal* was held to have done. Rather, the petition sought to invoke the subject matter jurisdiction which the court had over the parties and the judgment of dissolution it had previously entered. In this regard, we note the allegations in the petition that the letter agreements were not unconscionable and would have been binding upon the court had they been brought to its attention. These allegations were obviously included in the petition to satisfy section 502(b) of the Act, providing that the terms of a separation agreement are binding upon the court unless found unconscionable. (Ill. Rev. Stat. 1979, ch. 40, par. 502(b).) Had defendant merely been seeking enforcement of the letter agreements as contracts separate from and independent of the separation agreement, there would have been no need to allege that they were not unconscionable.

■ Defendant next asserts that, assuming *arguendo* that he did obtain a modification of the judgment of dissolution for plaintiff, his representation fell within the exception in Rule 2—106(c)(4) allowing contingency fees in matters subsequent to a final judgment of dissolution. Because it was not undertaken until seven years after entry of the judgment dissolving plaintiff's marriage *and* because it involved the enforcement of existing contracts rights, rather than the procurement of a property settlement, defendant maintains, the trial court erred in applying the rule to his representation of plaintiff.

Defendant's concession that he obtained a modification of the judgment of dissolution precludes the inconsistent argument that his representation did not involve the procurement of a property settlement.

The gist of the post-decree petition was that the first property

settlement was a nullity because of the failure to include therein Licciardi's property rights in Anadite, which were also marital property. Similarly, the gist of the judgment modification obtained pursuant thereto was to correct the judgment to award to plaintiff the fruits of what had been plaintiff's and Licciardi's marital property by enforcing the letter agreements between them. In this regard, we note that, in the first letter agreement, Licciardi stated that it was supplemental to the separation agreement dated January 29, 1979. More importantly, it was only by first obtaining enforcement of plaintiff's marital property rights under the first letter agreement that defendant could obtain enforcement of her rights to the fruits of that property under the second letter agreement. We thus agree with the trial court that defendant's representation of plaintiff was, indeed, tantamount to procuring a property settlement in a dissolution proceeding and thus within the bar of Rule 2—106(c)(4).

■ Defendant next asserts that, in finding that rule applicable here, the trial court misapprehended the public policy underlying it. Defendant asserts that that public policy is to prevent the encouragement of divorce and the hindrance of reconciliation which could result if attorneys were given financial interests in property settlements. (*In re Fisher* (1958), 15 Ill. 2d 139, 153 N.E.2d 832.) That public policy is inapplicable here because plaintiff and Licciardi had been divorced for seven years and he had remarried. He further argues that it was also inapplicable because the judgment of dissolution and property settlement did not result from bifurcated proceedings, to which courts of other States have found the rule applicable. See, *e.g., Meyers v. Handlon* (Ind. App. 1985), 479 N.E.2d 106.

We agree with defendant that the prohibition of contingent fee contracts in bifurcated dissolution proceedings does not apply here. We therefore reject plaintiff's attempt to analogize this case to cases involving such proceedings. Nonetheless, we do agree with plaintiff that the public policy behind Rule 2—106(c)(4) is best served by prohibiting attorneys from acquiring contingent financial interests in all domestic relations cases involving the division of marital property between either spouses or former spouses. That is, we believe the public policy behind the rule so important that, as long as an attorney's services are employed with respect to the division of marital property, the rule bars contingent fees therefor whether or not a judgment of dissolution has or has not been entered when the attorney is retained.

■ Defendant next contends that, contrary to the trial court's ruling on his motion to dismiss, count II of the amended complaint failed to state a cause of action for rescission of the contingent fee

contract as unconscionable. We have found that the trial court correctly entered summary judgment for plaintiff on count I of her amended complaint, which sought essentially the same relief as count II. Therefore, even assuming that count II does not state a cause of action, we find that fact of no avail to defendant.

Next, each party contends that the trial court erred in denying their respective motions for summary judgment on count III of the amended complaint, which alleged a conflict of interest in defendant's representation of plaintiff subsequent to his representation of her former husband.

As we have affirmed the summary judgment for plaintiff on count I of her amended complaint, we believe that reversal of the denial of either party's motion for summary judgment on count III would have no effect on defendant's liability to plaintiff. Having brought one complaint against defendant, plaintiff would be entitled to only one judgment against him regardless of the number of counts on which she prevailed. Moreover, even if she were entitled to more than one judgment against defendant, she could only have one satisfaction against him, inasmuch as she sought basically the same relief against defendant in all counts of her complaint. We therefore find no need to determine whether the trial court's rulings on count III were correct.

Defendant next contends that the trial court erred in granting plaintiff's motion for summary judgment on count II of defendant's counterclaim, which asserted a claim for *quantum meruit*. Defendant asserts that the trial court erred in holding that an attorney who enters into an unethical contingent fee contract is barred from a *quantum meruit* recovery on the basis of *Leoris v. Dicks* (1986), 150 Ill. App. 3d 350, 501 N.E.2d 901.

*Leoris* barred a *quantum meruit* recovery by an attorney who entered into a fee-splitting arrangement with another attorney in violation of the public policy against fee-splitting subsequently codified in Supreme Court Rule 107(a) (107 Ill. 2d R. 107(a)). Rather than establishing a *per se* rule against a *quantum meruit* recovery by an attorney for any ethical violation, defendant reads *Leoris* as barring an attorney's *quantum meruit* recovery only in fee-splitting cases where his fee is not based on his services to the client. In support of his construction of *Leoris,* defendant cites several cases from foreign jurisdictions.

■ We reject defendant's narrow reading of *Leoris.* We believe that, correctly construed, *Leoris* amply supports the denial of a *quantum meruit* recovery to defendant in this case. In rejecting the argument that the plaintiff was entitled to a *quantum meruit* recovery

even if his fee-splitting agreement with another lawyer violated public policy, the *Leoris* court stated:

> "Where enforcement of an illegal contract is sought, the courts will aid neither party but will leave them where they have placed themselves since the parties are *pari delicto* and can recover nothing under the contract. [Citation.] Therefore, we find that plaintiff is foreclosed from recovery on the theory of *quantum meruit* because *unprofessional conduct, as exhibited here,* clearly violated stated canons of ethics that bar recovery. [Citation.] Accordingly, we find that *plaintiff's conduct, which clearly violated established canons of ethics, warrants forfeiture of his attorney fees.*" (Emphasis added.) *Leoris,* 150 Ill. App. 3d at 354.

We believe that defendant places unwarranted emphasis on the first italicized passage from *Leoris* to argue that it is not applicable here while ignoring the second italicized passage. While the first passage deals with the violation of the prohibition against fee-splitting, the second passage is as applicable here as it was in *Leoris.* That is, defendant violated an established canon of ethics as surely as the plaintiff in *Leoris.* Therefore, the fact that they violated different canons is irrelevant. Acceptance of defendant's argument would place more importance on the disciplinary rule violated in *Leoris* than that violated here. This we will not do. Nor do we find *Talley v. Alton Box Board Co.* (1962), 37 Ill. App. 2d 137, 185 N.E.2d 349, which recognizes that unethical conduct may be a complete bar to any recovery in some cases, of any avail to defendant. This is one such case.

Finally, while other jurisdictions allow an attorney such as defendant a *quantum meruit* recovery (see, *e.g., Guenard v. Burke* (1982), 387 Mass. 802, 443 N.E.2d 892; *Wiley v. Silsbee* (1934), 1 Cal. App. 2d 520, 36 P.2d 854), it suffices to say that that is not the rule in Illinois.

In view of our affirmance of the summary judgment for plaintiff on count I of the amended complaint, we need not address defendant's next contention, *viz.,* that the award to plaintiff of prejudgment interest was error because the parties' contingent fee contract was legal. We likewise need not address his contention that the trial court erred for the same reason in imposing a constructive trust on monies paid by defendant to his wife and son.

Lastly, plaintiff contends that she was entitled to prejudgment interest at the rate of 6.74% compounded daily rather than at the rate of 5%, provided in the Interest Act (Ill. Rev. Stat. 1987, ch. 17, par. 6401 *et seq.*), which the trial court awarded.

■ In a chancery proceeding, the allowance of interest is governed by equitable considerations and lies within the sound discretion of the trial court. The trial court's decision will not be disturbed absent an abuse of that discretion. *Finley v. Finley* (1980), 81 Ill. 2d 317, 332, 410 N.E.2d 12.

We agree with plaintiff that the trial court based its award of prejudgment interest on equitable considerations rather than the Interest Act. We therefore accept plaintiff's assertion that the trial court could have awarded a higher interest rate than the 5% provided in the Interest Act. (See *First Arlington National Bank v. Stathis* (1983), 115 Ill. App. 3d 403, 450 N.E.2d 833.) However, we believe that the trial court abused its discretion in awarding prejudgment interest at the rate of 5% only if it concluded that it was bound by the Interest Act. The fact that the trial court awarded prejudgment interest "in accordance with" the Interest Act does not compel that conclusion. On the record before us, it may be that the trial court believed that prejudgment interest at the rate of 5% "in accordance with" the Interest Act was an equitable rate of interest in this case. From the record, we cannot say that the trial court abused its discretion in so doing, notwithstanding the evidence which plaintiff adduced to support the higher interest rate claimed.

For all of the foregoing reasons, we affirm: (1) the denial of defendant's motion to dismiss the amended complaint; (2) the summary judgment for plaintiff on count I of her amended complaint; (3) the summary judgment for plaintiff on counts IV and V of her amended complaint; (4) the summary judgment for plaintiff on count II of defendant's counterclaim; and (5) the award of prejudgment interest at the rate of 5% per annum.

Affirmed.

McNAMARA and WHITE, JJ., concur.