No. 69,614

In the Matter of LAURENCE M. JARVIS, *Respondent.*

(869 P.2d 671)

Opinion filed March 4, 1994.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause, and *Bruce E. Miller,* disciplinary administrator, was with him on the brief for petitioner.

*David R. Hills,* of Kansas City, argued the cause and was on the brief for respondent.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Lawrence M. Jarvis, an attorney admitted to the practice of law in Kansas. A hearing panel of the Kansas Board for Discipline of Attorneys (the panel) unanimously determined that Jarvis had violated Rule 1.5(f)(1) of the Model Rules of Professional Conduct (MRPC) (1993 Kan. Ct. R. Annot. 270), which provides:

"A lawyer shall not enter into an arrangement for, charge, or collect:
  (1) Any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony, support, or property settlement."

The panel then recommended that the discipline of public censure be imposed pursuant to Supreme Court Rule 203(a)(3) (1993 Kan. Ct. R. Annot. 162). Jarvis has filed exceptions to the panel's findings and recommended discipline.

The following facts do not appear to be in dispute. Jarvis was retained by Shirley Gerner to commence a divorce action against her husband, Ronal Gerner. Jarvis prepared the necessary pleadings and the petition was filed on August 24, 1990, in the Johnson County District Court (Case No. 90 C 9690). Trial of the action was had on January 23, 1991. At the conclusion of the evidence, the trial court granted the divorce and held, *inter alia,* that Mr. Gerner should pay maintenance to Ms. Gerner of $100 per month for 8.2 years. This maintenance figure was based upon a W-2 form Mr. Gerner had received the previous day. The form showed Mr. Gerner's 1990 pay was some $6,000 less than the pay he

had received in prior years. Each party was to pay his or her own attorney fees. Jarvis' fee was $2,100, based upon hours expended. Immediately following the trial, Ms. Gerner and Jarvis had a discussion. Both were dissatisfied over the amount of maintenance awarded and there was concern that Mr. Gerner had concealed the full amount of his income. Ms. Gerner did not desire to incur any additional attorney fees. Evidence as to what else may have been said in this January 23 conversation is disputed and will be discussed later in the opinion.

Continuing with the undisputed evidence, the next day (January 24, 1991), Jarvis prepared the following document:

"CONTINGENCY FEE AGREEMENT

"BE IT KNOWN on this twenty-fourth day of January, 1991, that Shirley Ann Gerner [hereinafter 'Client'] and Laurence M. Jarvis [hereinafter 'Attorney'] do agree to the following contingency fee contract.

"At the divorce trial of *Marriage of Gerner* held January 23, 1991, the Court awarded the amount of One Hundred Dollars ($100.00) per month for and as maintenance for a period of 8.2 years. This is based upon the Court's finding that respondent [Mr. Gerner] had income of approximately Twenty-Seven Thousand Dollars ($ 27,000.00) as shown on a W-2 produced by him in Court.

"Both Client and Attorney believe that there are additional monies earned by Mr. Gerner through commissions or otherwise in the year 1990. He had been making Thirty-Five to Thirty-Eight Thousand Dollars ($ 35-38,000.00) in all of the three (3) years prior to 1990.

"Attorney agrees to subpoena such records and conduct such discovery and production of documents as are necessary to attempt to find additional sources of income.

"If hereafter there should be an increase in the maintenance, the parties agree that they shall split equally, 50% each, any such increase due to the finding that additional income did in fact exist with respondent.

"Furthermore, Attorney shall file all appropriate motions and handle those motions and hearings at no charge to Client. It is expressly agreed that, if no additional sums of maintenance are recovered, then there are no fees or repayment of expenses due to Attorney.

"This agreement is as to additional maintenance only. It does not affect the attorneys fees previously earned by Attorney in performing services in the divorce case by the hour. Those fees are separate and apart from this agreement.

"Signed in Kansas City, Wyandotte County, State of Kansas.

"SHIRLEY ANN GERNER
'Client'

/s/ Laurence M. Jarvis
LAURENCE M. JARVIS
'Attorney' "

During the evening of that day, Mr. Gerner telephoned his attorney, Carl A. Fleming, to advise that he had just received a second W-2 form showing additional income. The discrepancy arose from the fact that the car dealership that employed Mr. Gerner had changed ownership during the year. That same evening, Mr. Fleming left a message on Jarvis' answering machine to call.

The following day (January 25), the two attorneys talked and agreed to increase the maintenance to $291.79 per month, based upon the additional income and in accordance with Johnson County guidelines Based on this agreement between counsel, Jarvis prepared the journal entry granting the divorce. The new maintenance figure was incorporated. This was forwarded to Mr. Gerner's counsel by Jarvis with a cover letter dated January 25, 1991, which states:

"Dear Carl:

"Enclosed you will find a decree that I have prepared following the hearing of January 23, 199[1]. You will notice the decree is different from what the judge has ordered because of the determination that additional income was in fact received in 1990 by your client. I ask that, based upon that finding and our discussions after the hearing, that you approve the journal entry. If there are any questions whatsoever, please get back to me.

"I will be out of town until February 4, 1991, and so there might be a delay in being able to reply to you.

"I hope that your client now has admitted to all income for 1990. I obviously reserve the right to ask for any and all appropriate relief in the event he has not now admitted to correct income.

"Very truly yours,

LAURENCE M. JARVIS, CHARTERED
/s/ Laurence M. Jarvis
By Laurence M. Jarvis."

Later Jarvis commenced an action against Ms. Gerner to collect the $2,100 fee for securing the divorce. This action was settled for a reduced amount ($1,000).

The panel found:

"8. The 'Contingency Fee Agreement' (Exhibit B) is an agreement for attorney fees in a domestic relations matter, the payment or amount of which is contingent upon the amount of alimony [maintenance] secured in

excess of One Hundred Dollars ($100.00) per month awarded by the divorce court on January 23, 1991, which might be secured by Respondent for Complainant by motion."

The panel then concluded the agreement was violative of MRPC 1.5(f)(1).

Jarvis filed exceptions to such determination. He testified that at the conclusion of the divorce trial, he and Ms. Gerner discussed the possible filing of a fraud action against Mr. Gerner over concealment of his true income and that he suggested a contingent fee contract for proceeding with such an action. He contends he mailed the agreement to his client on January 25. Ms. Gerner testified Jarvis called her in March as to why she had made no payments under the contingency fee contract. She testified she advised him she did not know what he was talking about. She denied receiving or agreeing to such a contract. On March 14, Jarvis sent her a copy signed by him. In April 1991, Jarvis telephoned Ms. Gerner and recorded the conversation. In the conversation, Jarvis attempted to convince Ms. Gerner that she had agreed to the contract. Jarvis contends the panel should have found the agreement related only to a fraud action and was not a contingency fee agreement involving securing an increase in maintenance.

The panel rejected Jarvis' contentions with the following analysis:

"Much testimony, discussion and argument was involved in these proceedings supporting Respondent's contention that he had not violated MRPC 1.5(f)(1) for he had only agreed to a contingency fee arrangement to represent Ms. Gerner in a post-divorce fraud action and that, as such, he was not seeking a contingent fee '. . . in a domestic relations matter . . .' nor was he seeking a contingent fee predicated '. . . upon the amount of alimony, . . . '. The difficulty with Respondent's argument is the explicit language contained in Exhibit B, which was drafted by respondent, examples of which are:

'Attorney agrees to subpoena such records and conduct such discovery and production of documents as are necessary to attempt to find additional sources of income. (Exhibit B, paragraph 4)

If hereafter there should be an increase in the maintenance, the parties agree that they shall split equally, fifty percent (50%) each, any such increase due to the finding that additional income did in fact exist with respondent. (Exhibit B, paragraph 5)

Furthermore, attorney shall file all appropriate motions and handle those motions and hearings at no charge to client. It is expressly agreed that, if no additional sums of maintenance are recovered, then there are no fees or repayment of expenses due to attorney. (Exhibit B, paragraph 6)

This agreement is as to additional maintenance only. It does not [affect] the attorney fees previously earned by attorney in performing services in the divorce case by the hour. Those fees are separate and apart from this agreement.' (Exhibit B, paragraph 7)

"Exhibit B contains no reference to a 'fraud' action and, in fact, is silent as to any separate or collateral action and can only be construed as a 'Contingency Fee Agreement' to seek, by post-trial motions, an increase in the maintenance determined by the divorce court on January 23, 1991.

"This Board has considered the legal authorities submitted by Respondent and finds them unpersuasive. It is not for this Board to determine what the 'policy' should be regarding contingent fees for proceedings seeking an increase in maintenance. The policy issue has been resolved by the adoption of the language contained in MRPC 1.5(f)(1). This Board is of the firm opinion that the rule prohibits a contingent fee in any domestic relations matter and/or in any matter seeking child support or maintenance (temporary or permanent) whether pendente lite, at trial, or by post-trial motion for modification or increase.

"The authorities cited by Respondent which approve of contingent fee arrangements for fraud actions are not rejected by this Board but are simply found to be inapplicable to the facts in this case as expressed by Exhibit B. The contingent fee agreement prepared by Respondent establishes on its face that it is a contingent fee agreement in a domestic relations matter, the payment or amount of which being contingent upon the increase in the amount of alimony which Respondent is able to obtain for the complainant.

"This is not a case of a contingent fee for the purpose of collecting a past due arrearage of maintenance previously ordered, and this Board expresses no opinion on the propriety of such an arrangement."

We agree with the panel's analysis of the nature and legal effect of the agreement. The instrument is clear and unambiguous. Like the panel, we are unpersuaded by Jarvis' attempts to establish that the instrument is anything other than what it clearly states it is—a contingency fee agreement in a domestic relations matter with the fee being contingent upon the amount of an increase in maintenance (alimony) which Jarvis might obtain for Ms. Gerner. This is a clear violation of MRPC 1.5(f)(1). The panel's findings in this regard are supported by clear and convincing evidence, and we adopt the same.

There are sound public policy reasons for the prohibition against contingent fees set forth in MRPC 1.5(f)(1). In *Dannenberg*

*v. Dannenberg*, 151 Kan. 600, 100 P.2d 667 (1940), this court refused to enforce a contingency fee contract based upon the amount of alimony awarded on the ground that such a contract was against public policy.

In *Meyers v. Handlon*, 479 N.E.2d 106 (Ind. App. 1985), enforcement was not permitted of a contingency fee contract on the amount of property to be awarded to the wife in a divorce action. The Indiana court gave the five reasons for its decision as follows:

"1) the public policy favoring marriage; 2) disapproval of giving attorneys a financial incentive to promote divorce; 3) the statutory availability of attorney fee awards making contingent fees unnecessary; 4) the potential for overreaching or undue influence in a highly emotional situation; and 5) a need for the court to make an informed distribution of property which includes the obligation of attorney fees." 479 N.E.2d at 109.

These reasons are not exclusive. Additionally, a contingency fee contract based upon the amount of alimony awarded or property settlement results in a conflict of interest in the attorney. If his or her fee is tied to the amount of support allowed, self interest would encourage the attorney to seek a maximum maintenance award at the expense of other parts of the decree, including child support, division of property, debts, etc. The best interests of the client could well suffer or be perceived to suffer as a result thereof. We have adopted MRPC 1.5(f)(1), and it is based on sound public policy.

Jarvis takes further exception to the imposition of censure recommended by the panel. In support thereof, he argues such discipline is inappropriate as: (1) He has been engaged in the private practice of law for 23 years and this is the first formal complaint filed against him; (2) he cooperated fully in the investigation; (3) he sought guidance from the Disciplinary Administrator's Office on this controversy; and (4) this is the first case alleging violation of MRPC 1.5(f)(1), and this opinion should only be a guide to attorneys for their future conduct.

We do not agree. The seeking of guidance from the Disciplinary Administrator's Office occurred in the form of a letter dated May 15, 1991, to the Disciplinary Administrator. Ms. Gerner had at that time consulted with other counsel and been told that such a contract was improper and had so advised Jarvis. The agreement

in question is a clear violation of MRPC 1.5(f)(1), not involving a departure from prior interpretations thereof.

Supreme Court Rule 203(a) (1993 Kan. Ct. R. Annot. 162) provides, in pertinent part:

"Misconduct shall be grounds for:

. . . .

(3) Censure by the Supreme Court which may or may not be published in the Kansas Reports as ordered by the Court."

Rule 203(a) in its present form makes no reference to "public" or "private" censure. The discipline in subsection (3) is censure. The order imposing censure shall be either published or unpublished as the court directs.

Prior to 1988, Rule 203(a)(3) provided for discipline by public censure. Orders imposing public censure were published. Orders imposing private censure were not published.

The usage of public or private censure, under our present rule, is rather misleading. Neither term appears in the rule and, additionally, such terms would seem to indicate a difference in the circumstances of the imposition of the censure itself (publicly as opposed to privately). We believe the terms "published censure" and "unpublished censure" are the more appropriate abbreviated terms to indicate whether the order imposing the discipline of censure is or is not to be published.

With this background, we conclude the hearing panel, in recommending public censure, is recommending that censure be imposed and that the court should direct the order imposing such discipline to be published. We agree with said recommendation and accept it.

IT IS THEREFORE ORDERED that Laurence M. Jarvis be censured for violation of MRPC 1.5(f)(1) of the rules of professional conduct.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this order be published in the official Kansas Reports.