146 P.3d 1130 (2006)
MARQUIS & AURBACH, and Terry A. Coffing, Esq., Petitioners,
v.
THE EIGHTH JUDICIAL DISTRICT COURT, in and for the COUNTY of CLARK; and the Honorable Mark R. Denton, Judge. Respondents, and
William Kenneth Tompkins, II, as Conservator of the Person and Estate of Judy Tompkins, Real Party in Interest.
William Kenneth Tompkins, II, as Conservator of the Person and Estate of Judy Tompkins, Petitioner,
v.
The Eighth Judicial District Court, in and for the County of Clark; and the Honorable Mark R. Denton, Judge. Respondents, and
Marquis & Aurbach, and Terry A. Coffing, Esq., Real Parties in Interest.
No. 43501.
Supreme Court of Nevada.
November 30, 2006.
*1132 Santoro, Driggs, Walch, Kearney, Johnson & Thompson and Oliver J. Pancheri and Nicholas J. Santoro, Las Vegas, for Petitioners/Real Parties in Interest Marquis & Aurbach and Coffing.
John Peter Lee Ltd. and John Peter Lee and Paul C. Ray, Las Vegas, for Real Party in Interest/Petitioner Tompkins.
Before the Court En Banc.

OPINION
HARDESTY, J.
These original petitions for writs of mandamus involve proceedings that began in the State Bar of Nevada's fee dispute arbitration program, which resolves fee disputes between attorneys and clients. In the fee dispute arbitration proceeding, the client challenged her contingency fee agreement with a firm as violating a professional conduct rule, SCR 155(4)(a).[1] This rule, in relevant part, prohibits contingency fee agreements if the payment or amount of the fee "is contingent . . . upon the amount of alimony or support, or property settlement in lieu thereof." After the fee dispute arbitration committee ultimately upheld the contingency fee agreement and awarded the entire amount of the fee, the district court entered judgment on this award. In doing so, the district court denied the firm its fees incurred in obtaining this judgment. The client then petitioned this court for a writ of mandamus, challenging the validity of the contingency fee. The firm also petitioned for a writ of mandamus, seeking, under a provision of the contingency fee agreement, attorney fees incurred in defending that agreement.
As a threshold matter, we must determine whether the client and firm have an adequate and speedy remedy in the form of an appeal from the district court's judgment, which would preclude writ relief. As SCR 86(12) provides that any award entered under the state bar's fee dispute arbitration program is subject to "de novo review" in the district court, and no statute or court rule authorizes an appeal from the district court's judgment on review, we conclude that we lack appellate jurisdiction over such judgments. Accordingly, *1133 the parties have properly sought mandamus relief.
Our resolution of these petitions turns on the plain language of SCR 155(4)(a). While not every contingency fee agreement in a domestic relations matter violates this rule, in this particular matter, the fee depended on the modification of a property settlement agreement that pertained to both community property and alimony. Consequently, the payment and amount of the fee was necessarily contingent, in part, on the amount of alimony, and the contingency fee therefore violates SCR 155(4)(a). As the contingency fee agreement was prohibited by this rule, it is unenforceable. The client's petition challenging the agreement is therefore granted, and the firm's petition, which seeks, under a provision of the contingency fee agreement, attorney fees incurred in defending that agreement, is dismissed.

FACTS
Andrew and Judy Tompkins were married in 1962 and divorced in 1973. The divorce decree ratified and approved a written agreement between the parties. Although called a "property settlement agreement," the agreement encompassed almost all aspects of the divorce; in addition to dividing the community property, it set forth terms for child support, child custody, alimony and attorney fees.
In particular, the agreement addressed alimony and community property division through a promissory note. The agreement included a provision whereby Andrew would retain almost all of the community property, valued at $1.3 million. Andrew would purchase Judy's interest in the community property for $650,000, to be paid by a $50,000 cash payment within six months and a promissory note for $600,000. The note prohibited Andrew from prepaying principal, and instead provided that Judy could demand up to $50,000 of principal annually, by sending a written request to Andrew by June 1 of each year; Andrew then had until December 1 to pay the principal. Thus, if Judy never demanded principal, interest would accrue indefinitely; if she requested the maximum every year, then the note would be fully paid in twelve years.
Andrew was to make monthly interest-only payments on the note, with interest initially set at 6%. The parties' settlement agreement specifically provided for alimony through adjustments to the interest rate. Beginning in 1975, the interest rate on the note was adjusted based on the consumer price index; this increased interest constituted Judy's alimony.
Over the years, Judy twice demanded principal payments, thus reducing the amount owed on the note to $500,000, but she then made no more demands. By 1998, 25 years later, Andrew's monthly payments were over $8,500, for an annual total of over $100,000, and his total payments over the years were more than twice the note's original amount. As a consequence, Andrew filed a complaint against Judy, asserting claims for breach of contract, breach of good faith and fair dealing, violation of usury statutes, reformation based on mutual mistake, or alternatively, reformation based on unilateral mistake, unconscionability, and fraud. Each claim was based on the fact that Judy had not made any additional demands for principal payments, and thus, because the principal balance was not being reduced, Andrew had to continue making interest payments in perpetuity. For all but the usury, unconscionability, and fraud claims, the damages Andrew sought were essentially the amount he claimed to have overpaid Judy in the form of interest on the principal balance. Andrew's usury claim sought a refund of all interest paid under the agreement, while his unconscionability and fraud claims sought to void the agreement and obtain an accounting of amounts refundable under these claims.
Judy retained attorney Terry Coffing and the law firm for which he worked, Marquis & Aurbach, to defend her against the complaint filed by Andrew. Judy was offered the choice of a $5,000 retainer with hourly billing or a one-third contingency fee. After Judy insisted to the firm that Marquis & Aurbach take the case on a contingency basis, she and the firm signed a contingency fee agreement. Judy indicated that she would be satisfied with a lump sum payment of $500,000, the *1134 principal amount still due on the note. Ultimately, Marquis & Aurbach negotiated a settlement for her of a $600,000 lump sum payment; the settlement was finalized six weeks after the contingency fee agreement was executed. Under the contingency fee agreement, the firm was entitled to $200,000.
Some months after the settlement, William Kenneth Tompkins, II, was appointed the conservator of Judy's person and estate and learned of the contingency fee. He initiated a fee dispute claim through the State Bar of Nevada's fee dispute arbitration program. Marquis & Aurbach agreed to participate, and the dispute proceeded into the arbitration program. The arbitration committee concluded that Marquis & Aurbach had violated a rule of professional conduct, SCR 155(4)(a), which prohibits contingency fee agreements in domestic relations matters when the payment is contingent on, among other things, the amount of alimony. Consequently, the committee found that the contingency fee agreement was unenforceable. The committee nevertheless concluded that Marquis & Aurbach was entitled to a reasonable fee for the work actually performed. Testimony at the arbitration indicated that Marquis & Aurbach's hourly rate would have yielded a fee of approximately $23,000. The committee considered the factors in SCR 155(1) and concluded that a reasonable fee in this matter was $75,000. Marquis & Aurbach appealed to the fee committee's executive council, but the council denied its appeal.
Marquis & Aurbach subsequently filed a petition in the district court to vacate the committee's arbitration award; Tompkins moved to confirm the award. Although it appears that during its review the district court followed the procedures outlined in Nevada's version of the Uniform Arbitration Act, NRS Chapter 38, the court did not apply the limited grounds for reviewing an arbitration award outlined in this chapter. Rather, the district court determined that de novo review was appropriate under SCR 86(12), which provides for de novo review of state bar fee dispute decisions. The district court concluded that the committee erred in ruling that the contingency fee agreement violates SCR 155 and remanded the matter to the committee for further proceedings concerning whether the contingency fee was reasonable.
On remand, the fee dispute committee conducted a second hearing and concluded that the contingency fee was reasonable and that Marquis & Aurbach was entitled to retain the entire $200,000. Marquis & Aurbach then filed, in the original district court case, a motion to confirm the award on remand and application for judgment on that award. The district court subsequently entered an order confirming the second fee dispute arbitration award and later entered judgment on this award.[2] Marquis & Aurbach then sought an award of its attorney fees incurred in defending its contingency fee in the underlying proceedings. The district court denied Marquis & Aurbach's request for fees but awarded costs.
Tompkins's writ petition challenges the district court's order confirming the fee dispute arbitration committee's contingency fee award. Marquis & Aurbach's petition challenges the district court's order denying its request for attorney fees.

DISCUSSION
Because we have never addressed whether district court judgments or orders on review of state bar fee dispute arbitration awards are appealable, and therefore inappropriately challenged in the context of a writ petition, we first address the threshold issue of whether these dispositions should be challenged through an appeal or a writ petition. Since no appeal lies from a district court judgment or order reviewing fee dispute arbitration awards, the parties have appropriately sought mandamus relief. We then consider the merits of Tompkins's petition, which turns on the contingency fee agreement's propriety under SCR 155(4)(a). The *1135 contingency fee agreement violates SCR 155(4)(a), because the fee was contingent, in part, on the amount of alimony. Thus we grant Tompkins's petition. Finally, since the contingency fee agreement is unenforceable, Marquis & Aurbach's petition, which seeks, under that agreement, the attorney fees it incurred in defending the agreement during the underlying proceedings, is necessarily dismissed as moot.
Propriety of writ relief
As an initial matter, we first consider how this court reviews district court judgments or orders reviewing decisions of the fee dispute arbitration committee. Under SCR 86(12), any award entered under the state bar's fee dispute arbitration program is subject to "de novo review" in the district court. This rule is silent, however, with regard to whether appellate review of such judgments or orders is available.
This court's appellate jurisdiction originates in the Nevada Constitution.[3] In considering that jurisdiction, we look to statutes and court rules.[4] As noted above, SCR 86(12) does not provide for an appeal to this court from a district court judgment or order reviewing a state bar fee dispute arbitration committee decision.
Although under NRAP 3A(b)(1), an appeal may be taken from "a final judgment in an action or proceeding commenced in the court in which the judgment is rendered," that rule does not apply here. The state bar's fee dispute arbitration proceedings commence before the fee dispute arbitration committee, not the district court. And SCR 86(12) plainly provides the right of de novo review in the district court. The district court thus acts in an appellate or reviewing capacity: the court does not conduct de novo proceedings, hearings, or a trial. Instead, the court reviews, using a de novo standard, the record from the arbitration proceeding and any briefs that the parties provide.[5] The district court should not take any new evidence or consider arguments not made before the arbitration committee. Once the review is complete, the district court must either enter judgment on the committee's award or modify the award in accordance with the conclusions reached during the de novo review and enter judgment on the modified award.[6] Thus, although the district court's review is de novo, with no deference to the committee's findings or conclusions of law,[7] its review cannot constitute an action or proceeding commenced in the district court. NRAP 3A(b)(1) therefore does not provide for an appeal to this court.[8]
*1136 As an appeal is not authorized from any district court judgment or order on fee dispute arbitration committee decisions,[9] the proper way to challenge such dispositions is through an original writ petition,[10] which is available when no plain, speedy, and adequate legal remedy exists.[11]
Standard for writ relief
This current petition seeks relief in the form of mandamus. The decision as to whether an original petition for a writ of mandamus will be considered is purely discretionary with this court.[12] A writ of mandamus is available to compel the performance of an act that the law requires or to control a manifest abuse of discretion.[13] Thus, in considering mandamus petitions challenging judgments or orders entered during a district court's review of a fee dispute arbitration committee decision, this court will determine whether the district court was legally compelled to take a particular action or whether it has manifestly abused its discretion.
Tompkins's petition
The crux of this matter requires us to determine whether the contingency fee agreement between Judy and Marquis & Aurbach was permissible under SCR 155(4)(a). Tompkins argues, in his petition, that the contingency fee agreement violates SCR 155(4)(a), which prohibits contingency fees "in . . . domestic relations matter[s], the payment or amount of which is contingent upon . . . the amount of alimony or support, or property settlement in lieu thereof." As the contingency fee was based, in part, on the amount of alimony, we conclude that it violates SCR 155(4)(a), and we grant Tompkins's petition.[14]
Validity of the contingency fee agreement
This court reviews a district court's interpretation of a statute or court rulein this case, SCR 155(4)(a)de novo, even in the context of a writ petition.[15] In the underlying proceeding, the district court misinterpreted SCR 155(4)(a), which, by its plain terms, applies in situations like those here, when the fee is partially contingent upon a modified amount of alimony. Thus, the contingency fee agreement was prohibited by SCR 155(4)(a).
SCR 155(4)(a) prohibits contingency fee agreements in certain domestic relations matters: "A lawyer shall not enter into an arrangement for, charge, or collect . . . [a]ny fee in a domestic relations matter, the payment or amount of which is contingent upon . . . the amount of alimony or support, or property settlement in lieu thereof."[16] The *1137 issues are thus whether the underlying case was a "domestic relations matter," and if so, whether the fee was impermissibly contingent upon "the amount of alimony or support, or property settlement in lieu thereof."
"Domestic relations matter"
In reviewing the first arbitration panel's award, the district court concluded that "any `domestic relations' component between the parties . . . ended years ago with entry of the Decree of Divorce." Thus, in the district court's view, SCR 155(4)(a) simply did not apply to the contingent fee in this case. We disagree.
SCR 155(4)(a) does not refer only to divorces, but to any "domestic relations matter." Thus, under its plain language, the rule covers more than simply divorce proceedings.[17] The agreement between Judy and Andrew arose out of their divorce and included alimony provisions: Andrew was to pay Judy for her half of the community property, by paying up to $50,000 per year in principal, as demanded by Judy, and monthly interest-only payments, beginning at a rate of 6%. The increase in interest payments each year, based on annual adjustments according to the consumer price index, served as Judy's alimony. Alimony and division of community property are domestic relations concepts.[18] Also, the record reflects that Marquis & Aurbach and Judy viewed this matter as primarily concerning alimony. And, Andrew's action to reform, rescind, or recover damages under this agreement could have been brought in the family court division, which further demonstrates that it concerned a "domestic relations matter."[19] Thus, SCR 155(4)(a) applies.
Contingent upon "the amount of alimony or support, or property settlement in lieu thereof"
The plain language of SCR 155(4)(a) prohibits contingency fees that are based upon "the amount of alimony or support, or property settlement in lieu thereof." Thus, we must determine whether the contingency fee agreement in this case made the fee contingent upon the amount of alimony or property settlement intended as alimony.
The fee agreement provided that Marquis & Aurbach would receive a fee of one-third of "the amount recovered or offered":
CLIENT AGREES TO PAY A CONTINGENCY FEE OF THIRTY-THREE PERCENT (33%) OF THE AMOUNT RECOVERED OR OFFERED. . . . THE CONTINGENT FEE SHALL BE THE PERCENTAGE OF THE TOTAL AMOUNT RECOVERED (INCLUDING ALL DAMAGES, COSTS, INTEREST, AWARDED ATTORNEY FEES, ETC.) . . . IF THE RECOVERY IS IN THE FORM OF A STRUCTURED SETTLEMENT (PAYMENTS INSTEAD OF A LUMP SUM), THE ATTORNEYS FEES AND UNPAID COSTS WILL BE PAID FROM THE FIRST MONIES RECEIVED.
These terms make sense only if a lump sum recovery, thereby modifying Andrew's obligations under the agreement, was obtained. In other words, if the only "recovery" in the underlying litigation had been a declaration that the agreement was still valid and that Andrew had to continue to make payments under its terms, no fee would have been *1138 due. The contingency fee agreement contemplates payment from the litigation's proceeds, and there would have been no fund to which the contingency fee could have attached had Andrew and Judy's agreement simply been upheld as written. Obviously, Marquis & Aurbach intended to receive a fee for its services, so this conclusion would be absurd. Also, the record indicates that from the start, Judy was interested in settling the dispute for a lump sum consisting of at least the principal amount due on the note. Accordingly, the fee agreement itself implies that some modification of the agreement, reducing the amount Andrew would pay Judy to a definite lump sum rather than an indefinite stream of future payments, was contemplated.
But by modifying the agreement, Judy's alimony was modified. Consequently, Marquis & Aurbach's fee was contingent, at least in part, on this modified alimony amount. The contingency fee agreement therefore violates the plain language of SCR 155(4)(a), which, again, prohibits contingency fees based on the amount of alimony.[20]
Our conclusion is supported by several authorities, both cases[21] and ethics opinions,[22] based on rules identical or similar to SCR 155(4)(a), which prohibit a contingent fee agreement in actions to modify support or property settlement agreements intended as alimony.[23]
Marquis & Aurbach insists that it sought only to enforce the agreement, not to modify it, relying on authority from other jurisdictions that permit contingent fees in at least some post-decree actions. For example, several courts have allowed contingent fees in post-decree actions to enforce the decree or to collect support arrearages.[24] Several ethics opinions have taken this approach as well.[25] Other courts have permitted *1139 contingency fees in actions to modify property distributions that were independent of alimony and support.[26] We agree that SCR 155(4)(a) does not prohibit a contingent fee agreement in an action to collect past-due payments, so long as the fee was reasonable, any statutory fees awarded were credited against the contingent fee, and the client was advised in advance of other available options, which could include an hourly fee agreement or free services provided by the district attorneys' offices.[27] Also, the rule's plain language does not ban a contingency fee in an action to modify a property settlement agreement that is independent of support issues.[28]
But this case does not concern collection of past-due amounts owed or modification of a property settlement agreement that was unrelated to support or alimony. Andrew made all payments required under the agreement until he brought the underlying action. Additionally, the agreement here, by its own terms, was not independent of alimony but rather expressly provided for alimony, and Judy and Marquis & Aurbach consistently treated the underlying litigation as involving alimony. Finally, even if Judy's goal could be expressed as enforcement of her right to an indefinite stream of future alimony payments, the Colorado ethics opinion cited by Marquis & Aurbach in its brief specifically states that a contingent fee is not appropriate in an action to collect future support.[29] Accordingly, the authority relied upon by Marquis & Aurbach does not persuade us that its fee agreement in this case complied with SCR 155(4)(a)'s plain language.
Therefore, we determine that while not every contingency fee in a domestic relations *1140 matter violates SCR 155(4)(a), the instant one does.[30] The district court was legally compelled to review the first panel's award under the plain language of SCR 155(4)(a). Because it failed to do so, the order confirming the arbitration award must be vacated, and thus we grant Tompkins's petition.[31]
Marquis & Aurbach's petition
As we grant Tompkins's petition and direct that the arbitration award be vacated, since the contingency fee agreement is unenforceable, we necessarily dismiss as moot Marquis & Aurbach's petition.[32] This petition challenges the district court's denial of attorney fees incurred in defending the contingency fee agreement in the underlying proceedings, which Marquis & Aurbach sought under a provision of that agreement.

CONCLUSION
The contingency fee agreement at issue in these petitions violates SCR 155(4)(a) because the fee is contingent, in part, on the amount of alimony. Therefore, we grant Tompkins's petition. The clerk of this court shall issue a writ of mandamus directing the district court to vacate its order confirming the second arbitration panel's award, the order awarding costs to Marquis & Aurbach,[33] and the judgment entered on the arbitration and costs awards. The writ shall further direct the district court to conduct a de novo review of the first arbitration panel's award under the principles announced in this opinion. Finally, because we grant Tompkins's petition, we necessarily dismiss Marquis & Aurbach's petition, which seeks, under a provision of the contingency fee agreement, attorney fees incurred in its attempt to enforce that agreement.
ROSE, C.J., BECKER, DOUGLAS, MAUPIN and PARRAGUIRRE, JJ., concur.
GIBBONS, J., dissenting.
I disagree with the majority regarding the interpretation of the former SCR 155(4)(a), now codified as Nevada Rule of Professional Conduct (RPC) 1.5(d)(1). The district court correctly concluded that the contingency fee agreement did not violate SCR 155.
The majority acknowledges that SCR 155(4)(a) does not prohibit a contingent fee agreement in certain post-divorce actions "so long as the fee was reasonable, any statutory fees awarded were credited against the contingent fee, and the client was advised in advance of other available options, which could include an hourly fee agreement or free services provided by the district attorneys' offices."[1]
In this case, Judy Tompkins was given the option of retaining the services of the law firm either on an hourly basis billed against an initial retainer or on a contingency basis. Judy voluntarily chose the contingency basis.
Since this litigation was initiated after the parties were divorced, the litigant and attorney should have the option of entering into a contingency fee agreement. Based upon the majority's opinion, I would urge this court to modify the language of the rule to permit such a contingency fee agreement.
NOTES
[1] The rules governing professional conduct were substantially revised earlier this year, effective May 1, 2006. Former SCR 155(4)(a) is now Nevada Rule of Professional Conduct 1.5(d)(1). No change, other than renumbering, was made in this provision. Since the earlier version applied at all times pertinent to this matter, we will use the former version in this opinion.
[2] After the second panel entered its award, Tompkins instituted a new district court proceeding, in which he sought to vacate the award under a de novo review. When this new district court proceeding was assigned to the same judge who had presided over the review of the original proceeding, Tompkins filed a peremptory challenge. Apparently, the second proceeding remains pending below and is awaiting the outcome of this court's review of these petitions.
[3] See Nev. Const. art. 6, § 4 (providing that this court has appellate jurisdiction over all civil cases arising in district courts).
[4] Taylor Constr. Co. v. Hilton Hotels, 100 Nev. 207, 678 P.2d 1152 (1984).
[5] If requested, the district court, at its discretion, may allow oral argument on the issues raised in the de novo review.
[6] Because the district court must enter judgment on either the original award or an award it has modified, the court should not remand the matter to the arbitration panel for further proceedings at the conclusion of its de novo review. In certain exceptional situations, however, it may be necessary for the district court to remand the matter to the panel on a limited basis during the review. One such situation would be where the panel refused to compel production of certain documents requested during the arbitration proceeding, but the district court, during its review, determined that the documents should have been produced and considered by the panel. Once the panel considered the documents and either modified or reaffirmed its decision, the district court could then complete its review of the arbitration proceeding, including the conclusions reached based on the newly produced documents.
[7] See Black's Law Dictionary 106 (8th ed.2004) (defining "appeal de novo," generally, as one in which the reviewing body uses a lower tribunal's record but considers the evidence and law without deference to the lower tribunal's rulings).
[8] Because SCR 86(12) establishes the method to obtain review of a decision issued by the committee and sets forth a clear standard of review to be applied by the district courtde novo reviewthe provisions and standards of review of NRS Chapter 38 have no applicability to a district court's review of a committee decision. Although Tompkins initially contended that the language of the parties' arbitration agreement required the district court to apply the limited standards of review applicable to NRS Chapter 38 proceedings, and not a de novo standard, in his later supporting affidavit, he acknowledges that under SCR 86(12) the district court was required to apply a de novo standard of review.
[9] We note that the provisions of NRS Chapter 38 providing for appeals to the Supreme Court from certain orders entered by a district court reviewing a Chapter 38 arbitration proceeding do not apply to orders entered by a district court reviewing, de novo, a decision of the fee dispute arbitration committee.
[10] See Nev. Const. art. 6, § 4 (giving this court jurisdiction to consider original petitions for mandamus and prohibition); NRS Chapter 34; NRAP 21.
[11] NRS 34.170; see also Pan v. Dist. Ct., 120 Nev. 222, 224, 88 P.3d 840, 841 (2004) (noting that this court has consistently held that an appeal is an adequate legal remedy precluding writ relief).
[12] Smith v. District Court, 107 Nev. 674, 818 P.2d 849 (1991).
[13] See NRS 34.160; Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981).
[14] Because we conclude that the fee agreement violates SCR 155(4)(a) and grant Tompkins's petition on that basis, we need not address Tompkins's arguments that Judy was not competent to enter into the agreement and that the district court improperly required the second arbitration panel to consider the risk involved in taking Judy's case on a contingency basis and community custom in assessing the reasonableness of the contingency fee.
[15] Borger v. Dist. Ct., 120 Nev. 1021, 102 P.3d 600 (2004) (applying a de novo standard to review a district court's interpretation of NRS 41A.071 in the course of resolving an original petition for a writ of mandamus); Beazer Homes Nevada, Inc. v. Dist. Ct., 120 Nev. 575, 97 P.3d 1132 (2004) (applying a de novo standard to review district court constructions of NRS 78.585 in the course of resolving an original petition for a writ of mandamus or prohibition).
[16] The rule also prohibits contingency fee agreements whose payments or amounts are contingent upon "the securing of a divorce." Since, at the time the contingency fee agreement was reached, Judy and Andrew had been divorced for over 25 years, the fee clearly was not contingent on the securing of a divorce.
[17] See Thran v. District Court, 79 Nev. 176, 181, 380 P.2d 297, 300 (1963) (construing a court rule based on its plain language).
[18] We note that under Renshaw v. Renshaw, 96 Nev. 541, 611 P.2d 1070 (1980), an unmerged divorce agreement may not be modified on the equitable grounds provided for in the domestic relations statute, see NRS 125.150; rather it may be enforced or attacked only on contractual grounds. But characterizing the action as one for reformation or rescission rather than equitable modification does not alter the fundamental nature of the underlying disputewhich concerned primarily alimony. Indeed, by the time Andrew brought his action, approximately 70% of his monthly payments consisted of the increased interest that served as alimony under the settlement agreement.
[19] See NRS 3.223(1)(a) (defining family court division's jurisdiction); Barelli v. Barelli, 113 Nev. 873, 944 P.2d 246 (1997) (holding that an action to reform or rescind an unmerged property settlement agreement may be brought in family court or general jurisdiction district court).
[20] See DiMartino v. Dist. Ct., 119 Nev. 119, 121, 66 P.3d 945, 946 (2003) (applying plain language test to interpret professional conduct rule).
[21] See Licciardi v. Collins, 180 Ill.App.3d 1051, 129 Ill.Dec. 790, 536 N.E.2d 840 (1989) (prohibiting contingency fee in action to modify marital property settlement that provided for maintenance in gross); Matter of Jarvis, 254 Kan. 829, 869 P.2d 671 (1994) (holding that contingency fee agreement in action to increase spousal maintenance was void).
[22] Ariz. St. Bar Comm. on Rules of Prof'l Conduct, Op. 93-04 (1993); Philadelphia Bar Ass'n Prof'l Guidance Comm., Op.2001-9 (2001); Pa. Bar Ass'n Comm. on Legal Ethics & Prof'l Responsibility, Informal Op. 96-67 (1996).
[23] The first panel reasoned that the underlying case was a domestic relations matter, contingency fees are prohibited in domestic relations matters, and thus, a contingency fee in this matter was unenforceable. We decline to interpret SCR 155(4)(a)'s prohibition as broadly as the Committee, and so not every contingency fee agreement in a domestic relations matter is prohibited. But while not all contingency fees in domestic relations matters are unenforceable, the instant fee agreement violates SCR 155(4)(a).
[24] Doe v. Doe, 97 Hawai`i 160, 34 P.3d 1059 (2001) (holding that contingency fee in past-due support collection was permissible and could be considered in determining a reasonable statutory fee award, and remanding to district court for determination of a reasonable fee award in light of possibility for a contingent fee enhancement); In re Spak, 188 Ill.2d 53, 241 Ill.Dec. 618, 719 N.E.2d 747 (1999) (imposing discipline upon a lawyer for failure to reduce a contingent fee agreement to writing, but assuming that agreement for a contingency fee based on collection of past-due property settlement payment was permissible had it been written); Fletcher v. Fletcher, 227 Ill.App.3d 194, 169 Ill.Dec. 211, 591 N.E.2d 91 (1992) (permitting a contingent fee agreement in action to collect past-due support, so long as the fee agreement was made part of the record and any awarded statutory fees were credited against the contingency fee); see also Restatement (Third) of the Law Governing Lawyers § 35 (2000) (providing that contingency fees are prohibited only when they are contingent on a specific result in a divorce proceeding or concerning custody of a child, thus excluding post-decree financial proceedings); Model R. Prof'l Conduct 1.5(d)(1) cmt. 6 (2002) (permitting contingency fee in actions to collect post-judgment balances due under financial orders).
[25] Ariz. St. Bar Comm. on Rules of Prof'l Conduct, Op. 93-04 (1993) (stating that contingency fee agreement was permissible in an action to collect support arrearages, but not to modify child support, alimony, or a property settlement in lieu thereof); Cal. St. Bar Comm. on Prof'l Responsibility & Conduct, Formal Op.1983-72 (1983) (setting forth several factors to consider in determining whether a contingent fee agreement was permissible, and specifically noting that such a fee agreement would not be barred in an action to collect past due support, under former Model Code, which did not expressly prohibit contingency fees in domestic matters); Colo. Bar Ass'n Ethics Comm., Formal Op. 67 (1985) (permitting a contingent fee agreement in an action to collect past-due child and spousal support, and noting that such a fee would not be appropriate to collect future support); Ill. St. Bar Ass'n, Op. 95-16 (1996) (approving contingent fee to enforce and collect amounts owed under a divorce decree, under rule that specifically permitted such fees in any post-decree matter); Mich. St. Bar, Op. RI-28 (1989) (permitting a contingent fee agreement in an action to collect past due alimony, so long as it was the only practical means for the client to obtain representation, the fee was reasonable, and any court-awarded fees were credited against the contingent fee); N.J. Adv. Comm. on Prof'l Ethics, Op. 618 (1988) (concluding that a contingent fee agreement in action to collect past due alimony was permissible); Or. St. Bar, Formal Op.2005-13 (approving a contingent fee to enforce a pre-existing support order, so long as the fee is reasonable); Tex. Prof'l Ethics Comm., Op. 485 (1994) (permitting a contingent fee in action to collect past-due child support, so long as the percentage conforms to Texas guidelines and the lawyer discloses all fee options to the client); Wash. State Bar Ass'n, Formal Op. 28 (1954) (permitting a contingent fee agreement to collect past due allowances). We note that Florida State Professional Bar Committee, Op. 89-2 (1991), also cited by Marquis & Aurbach, was withdrawn on June 23, 2006, after briefing in this matter had concluded. Also, the fee at issue in New York State Bar Ass'n Committee on Professional Ethics, Op. 690 (1997), was for a concurrent tort action, not the parties' divorce; the opinion is therefore of limited use in this case.
[26] Salter v. St. Jean, 170 So.2d 94 (Fla.Dist.Ct. App.1964) (enforcing contingency fee agreement arising from action to recover client's separate property, independent of alimony or support); Burns v. Stewart, 290 Minn. 289, 188 N.W.2d 760 (1971) (permitting contingency fee in action to recover marital property, since divorce was separately provided for in a flat fee agreement and Minnesota law provided for an independent action for separate maintenance, so that property action was not improperly contingent on divorce); Robinson, Bradshaw & Hinson v. Smith, 129 N.C.App. 305, 498 S.E.2d 841, 847 (1998) (prohibiting fee contingent on divorce, child support or alimony, but allowing fee contingent on equitable property distribution) (citing In re Cooper, 81 N.C.App. 27, 344 S.E.2d 27 (1986)).
[27] See SCR 155(1) (requiring that all fees be reasonable); Fletcher, 169 Ill.Dec. 211, 591 N.E.2d at 94 (conditioning approval of a contingent fee agreement in action to collect past-due support upon counsel's credit of any awarded statutory fees against the contingency fee); Tex. Prof'l Ethics Comm., Op. 485 (1994) (permitting a contingent fee in action to collect past-due child support, so long as the lawyer discloses all fee options to the client).
[28] An ethics opinion by the Nevada Standing Committee on Ethics and Professional Responsibility took a contrary view, apparently assuming that any property settlement agreement necessarily impacts support and alimony. See Nev. Standing Comm. on Ethics and Prof'l Responsibility, Formal Op. 16 (1993). We do not agree that SCR 155(4)(a) is as broad as the Committee opines. If, in fact, as in this case, alimony is part of the property settlement agreement, then no contingency fee is permissible. But SCR 155(4)(a)'s plain language does not encompass a property settlement agreement that is wholly independent of support and alimony.
[29] Colo. Bar Ass'n Ethics Comm., Formal Op. 67 (1985).
[30] We note, however, that the language in SCR 155(4)(a) does raise some concerns with respect to certain individuals' ability to retain an attorney in domestic relations cases.
[31] See NRS 34.160 (noting that a writ of mandamus may be issued by the supreme court "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station").
[32] University of Nevada v. Tarkanian, 95 Nev. 389, 394, 594 P.2d 1159, 1162 (1979) (noting that the duty of this court is to resolve actual controversies and not to opine on moot questions or abstract propositions).
[33] Although Tompkins makes no arguments regarding the award of costs, the costs award must be vacated based on our decision to grant Tompkins's petition.
[1] See SCR 155(1) (requiring that all fees be reasonable); Fletcher v. Fletcher, 227 Ill.App.3d 194, 169 Ill.Dec. 211, 591 N.E.2d 91, 94 (1992) (conditioning approval of a contingent fee agreement in action to collect past-due support upon counsel's credit of any awarded statutory fees against the contingency fee); Tex. Prof'l Ethics Comm., Op. 485 (1994) (permitting a contingent fee in action to collect past-due child support, so long as the lawyer discloses all fee options to the client).